SECURITY PACIFIC FINANCIAL SERVICES, Plaintiff-Appellee, v. CYN-THIA JEFFERSON *et al.*, Defendants and Counterclaimants (Security Pacific Financial Services, Inc., *et al.*, Counterdefendants; Cynthia Jefferson *et al.*, Defendants-Appellants).

First District (5th Division)   Nos. 1—92—3935, 1—93—0873 cons.

Opinion filed March 31, 1994.

Law Offices of Daniel A. Edelman (Daniel A. Edelman, of counsel) and Lawrence Walner & Associates, Ltd. (Lawrence Walner, of counsel), both of Chicago, for appellants.

Peter Carey and Michael G. Connelly, both of Chicago, for appellee.

JUSTICE COUSINS delivered the opinion of the court:

On February 6, 1991, following extensive litigation and negotiations between counsel for Cynthia Jefferson, Dennis Jefferson, and other class plaintiffs (counterplaintiffs) and Security Pacific Financial Services, Inc., Community Bank of Greater Peoria, and Federal Home Loan Mortgage Corp. (Community Bank or Bank), the trial court entered an order approving a class settlement agreement entered into between the parties. The trial court found the agreement to be fair, reasonable, and adequate for the class. It also retained jurisdiction "of all matters relating to the interpretation, administration, effectuation and enforcement of" the settlement agreement.

The trial court approved the construction claim evaluator and the arbitrator. The parties agreed on a set of instructions for the construction claim evaluator, claim forms, and notices to be sent to the claimants. However, a dispute arose in which the Bank alleged that the construction claim evaluator was not following proper procedures. Counterplaintiffs claimed that the Bank was being uncooperative.

On June 23, 1992, counterplaintiffs filed a motion with the court to compel Community Bank's compliance with the settlement agreement. On June 26, 1992, the Bank petitioned the court to

remove the construction claim evaluator and to issue a set of supplemental instructions.

On November 2, 1992, the trial court denied the Bank's motion to dismiss the claim evaluator, approved of and allowed use of the Bank's supplemental instructions, directed the construction claim evaluator to apply them, and denied counterplaintiffs' motion to compel compliance with the settlement agreement. Counterplaintiffs appeal this order.

The issues presented for review are: (1) whether an arbitration provision contained in a settlement agreement designed to resolve individual claims vitiated the trial court's jurisdiction to hear and determine Community Bank's complaints concerning claim determinations of the claims evaluator, (2) whether the trial court deprived counterplaintiffs of due process with regard to notice and claim forms sent to counterplaintiff class members, (3) whether the trial court properly found the supplemental instructions to be consistent with the class settlement agreement, and (4) whether the trial court abused its discretion by refusing to hold a full evidentiary hearing.

We affirm.

BACKGROUND

Counterplaintiffs are homeowners who reside in Illinois and Missouri. During the 1980s, Community Bank made 6,000 loans to such people. The loans were originated primarily by a variety of home improvement contractors who presented Community Bank loan documentation to the homeowners.

Counterplaintiffs lodged claims against Community Bank and a number of financial institutions to which the Bank had sold loans asserting that the loans had been induced by unfair and deceptive practices, in violation of the Federal RICO statute, and that Community Bank illegally disclaimed responsibility for defective home improvement work.

Class plaintiff Rosetta Heastie filed the initial complaint in Federal court against Community Bank. Proceedings in the original Federal action are found in *Heastie v. Community Bank* (N.D. Ill. 1988), 690 F. Supp. 716, *later proceeding* (N.D. Ill. 1989), 125 F.R.D. 669, *summary judgment granted in part* (N.D. Ill. 1989), 727 F. Supp. 1133, and *summary judgment granted* (N.D. Ill. 1989), 727 F. Supp. 1140.

Community Bank and many loan transferees independently filed additional lawsuits in State court to enforce the loans against the class plaintiffs. In response, many of the class plaintiffs counterclaimed. The various State lawsuits were consolidated at the time of the settlement agreement.

Following extensive litigation and negotiations between counsel for counterplaintiffs and Community Bank, the parties entered into the aforementioned settlement agreement on August 21, 1990.

The trial court initially approved the settlement agreement and certified a settlement class. Notice was sent to the class and a hearing was held. The trial court gave final approval to the settlement agreement on February 6, 1991, in which it found that the notice to the class satisfied the requirements of sections 2—801 through 2—806 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, pars. 2—801 through 2—806) and that the settlement agreement was "within a range that is fair, reasonable and adequate to the class." The court also deemed that it retained, among other things,

> "*jurisdiction of all matters relating to the interpretation, administration, effectuation and enforcement* of this Settlement Agreement." (Emphasis added.)

Pursuant to article III(E)(11) of the settlement agreement, the trial court approved John Tomassi (Tomassi or construction claim evaluator) to be the construction claim evaluator. Counterplaintiffs had earlier nominated him for this position.

Shortly thereafter, Tomassi began processing the construction claims. Approximately 820 class members submitted construction claim forms in varying degrees of completion: many were returned totally blank other than providing the minimal identification information.

Pertinent here is article III(D):

> "D. *Requirements for Construction Benefits*: In order to qualify for receipt of a construction claim benefit, each potentially eligible class member must satisfy, in the manner set forth below, the following eligibility requirements:
>
> 1. *Membership in class*: Be a member of the class as defined in *Exhibit A*.
>
> 2. *Existence of defect*: The work or equipment constructed or installed by the home improvement contractor must have been defective in workmanship and/or materials at the time of construction or installation. Defective or defect shall mean failure to conform to the home improvement contract, including any applicable warranties, applicable building code standards or recognized home improvement industry standards.
>
> 3. *Complaint or present existence of defect*: Within one year of the disbursement of the class member's loan, the class member must have complained, either orally or in writing, to Community, *** about the construction defect, or the construction defect was the subject of documented inspection

by such an organization within the same time period. This eligibility requirement shall be waived if *** (ii), from a viewing of the allegedly defective construction work or other physical evidence (such as photographs), it is obvious that such construction work was defective at the time it was performed or installed. These determinations shall be made by the Construction Claim Evaluator."

Additionally:

"The Evaluator must be satisfied that the work or equipment constructed or installed by the home improvement contractor was defective in workmanship and/or materials at the time of construction or installation or that there was a subsequent breach of warranties extending after the time of installation or construction. The Evaluator may base his determination on inspection, photographs, or other evidence submitted by the claimant."

Article III(E)(9) of the settlement agreement provided:

"From foregoing documents, information and materials, and from a viewing of the premises where deemed appropriate by the Evaluator, the Evaluator shall determine whether the eligibility requirements have been met and, if so, the amount of the construction benefit due the class member. Notice of the Evaluator's determination shall be given to the class member and Community."

In administering the construction claim procedure under the settlement agreement, Tomassi, after receiving a claim form from the putative class member, would initially review the form. If the returned claim form failed to provide threshold information necessary to determine whether the class member had a claim, or if so, whether the class member satisfied the eligibility requirements, Tomassi would send the class member a notice requesting the "missing" information and a form on which to provide the "missing" information. Upon receipt of the response to the notice of missing information, Tomassi would then evaluate the material that had been submitted to him. He also conducted site visits and telephoned class members. Tomassi would then issue his determination on each "claim" and would send notice of same to counterplaintiffs and the Bank.

Community Bank did not agree with this procedure.[1] Tomassi agreed to stop processing claims until they had a meeting which was ultimately held but solved nothing.

---

[1] Through April 3, 1992, Tomassi had determined 417 claims of which 238 were denied. Up to this date, Tomassi made awards on 181 claims. Of those, 33 were major defect awards, 67 minor defect awards, and 81 were awards containing both major and minor benefits. The Bank has paid 33 of

On June 23, 1992, the class filed a motion to compel the Bank's compliance with the settlement agreement. In response, on June 26, 1992, the Bank petitioned the court to remove Tomassi and issue a set of supplemental instructions restricting him from engaging in activities which it considered improper.

On November 2, 1992, the trial court denied the Bank's motion to dismiss Tomassi because it did not find bad faith, allowed the Bank's motion in so far as it sought a supplemental set of instructions, approved the Bank's draft of supplemental instructions, directed Tomassi to apply them, and denied counterplaintiffs' motion to compel compliance with the settlement agreement. Counterplaintiffs appeal this order.

I

Counterplaintiffs contend that the arbitration provision contained in the settlement agreement vitiated the trial court's jurisdiction to hear and determine Community Bank's complaints concerning claim determinations of the claims evaluator. We disagree.

As there exists a strong policy in favor of settlement and the resulting avoidance of costly and time-consuming litigation, courts retain inherent power to enforce settlement agreements reached in litigation pending before them. (*DeBose v. Mueller* (N.D. Ill. 1982), 552 F. Supp. 307, 308.) District courts which enter a judgment pursuant to a settlement agreement possess the power to mandate compliance. *United States v. Baus* (1st Cir. 1987), 834 F.2d 1114, 1127; see also *Alexander v. Chicago Park District* (7th Cir. 1991), 927 F.2d 1014, 1022-23 (the question of whether the attorney for the class plaintiffs had properly disbursed settlement funds to class members fell within the jurisdiction retained by the court).

And, unless otherwise agreed upon by the parties, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. *AT&T Technologies, Inc. v. Communications Workers of America* (1986), 475 U.S. 643, 649, 89 L. Ed. 2d 648, 656, 106 S. Ct. 1415, 1418.

Counterplaintiffs assert that the trial court erroneously disregarded provisions of the settlement agreement which provided:

> "The class member or Community may seek review of the Evaluator's *determination only through the Arbitration procedure set forth in part IV hereof.*" (Emphasis added.)

Under section IV, "*Review of Determination of Processor or Evaluator,*" is the following:

---

the construction awards but filed demands for arbitration or requests for reexamination on 146 of those 181 awards.

"E. *The Arbitration Procedure set forth herein shall be the exclusive remedy for the class member and Community, and the determination of the Arbitrator shall be final and not subject to appeal or other challenges.*" (Emphasis added.)

However, in its February 6, 1991, order, approving the settlement agreement, the trial court stated that it retained jurisdiction of matters relating to "the interpretation, administration, effectuation and enforcement" of the settlement agreement.

Moreover, *counterplaintiffs* filed, *with the trial court,* a motion to compel the Bank's performance pursuant to the settlement agreement. In response, the Bank filed a motion to have the construction claim evaluator removed.

The crux of the Bank's complaint was that Tomassi was making subjective rather than the requisite objective determinations. According to the Bank, he also telephoned claimants and investigated claims even where no initial complaint had been made by the prospective claimant. Tomassi also allegedly acted as an ombudsman instead of merely a construction claim evaluator by making an "independent item-by-item comparison of the class member's construction contract with the work performed." The Bank contended that such behavior "solicited the identical information which had been sought in questions 17 through 21 of the Claim Form."

We note that the Bank did not ask the trial court to resolve disputes over the actual determinations that the evaluator made, but rather the Bank was concerned with his procedure, his conduct. Even Tomassi, in response to the Bank's petition, stated:

"Community Bank's first complaints are that John Tomassi engaged in an 'ombudsman-type investigation' and based awards on his 'own independent item-by-item comparison of the class member's construction contract with the work performed.' *This is precisely what is required by the Instructions and was agreed to by the parties to this litigation.*" (Emphasis added.)

The trial court denied the Bank's request to have Tomassi removed because it found that he did not purposely violate the mandates of the settlement agreement. However, the trial court directed Tomassi to employ the Bank's supplemental instructions, which provided guidance in order to restrict him from engaging in improper activities.

Counterplaintiffs contend that the actions of the trial court contravened the provision in the settlement agreement that parties may seek review of the evaluator's determinations "only through the Arbitration procedure." Counterplaintiffs assert that this specific provision should be given precedence because the court's retention of jurisdiction was general. We disagree.

■ Whether the procedure which Tomassi followed conformed to the provisions of the settlement agreement involves an interpretation of the settlement agreement and the settlement agreement order provided that the court retained "jurisdiction of all matters relating to the interpretation *** of this Settlement Agreement." This provision of the order is controlling.

Further, it would be illogical to expect an arbitrator to decide whether the proper procedure was being followed because even if the arbitrator found that the construction claim evaluator misapplied the dictates of the settlement agreement, he would not have the authority to remove him. Only the trial court had such inherent powers of removal and approval. The trial court's "interpretation" and "enforcement" fell within the purview of its February 6, 1991, retention of jurisdiction order.

Moreover, counterplaintiffs' reliance on *Gilmer v. Interstate/ Johnson Lane Corp.* (1991), 500 U.S. 20, 114 L. Ed. 2d 26, 111 S. Ct. 1647, is inapplicable to the present case. In *Gilmer*, the plaintiff, as a precondition to becoming a registered investment advisor with the various exchanges, signed an agreement to arbitrate any dispute, claim or controversy with his firm. The plaintiff argued that his age discrimination case brought pursuant to the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621 *et seq.* (1988)) should be exempted from the arbitration agreement. The Supreme Court nevertheless enforced the arbitration agreement. *Gilmer*, 500 U.S. at 35, 114 L. Ed. 2d at 43, 111 S. Ct. at 1657.

*Gilmer* is inapposite because it does not involve a class action nor does it involve the trial court, which expressly retained jurisdiction over this dispute. *Gilmer* is a case which is limited to those who, as part of their contractual obligations to receive trading privileges at various exchanges, agreed to arbitrate *all* claims in return for permission to operate as investment advisors. Such was not the case here.

## II

■ Counterplaintiffs next contend that the trial court deprived them of due process with regard to notice and claim forms sent to counterplaintiff class members. We disagree.

In class actions, due process requires that (1) members of the plaintiff class have an opportunity to be heard and to participate in the litigation, an opportunity to "opt out" of the litigation, and adequate representation of absent class members' interests. *Antry v. Illinois Educational Labor Relations Board* (1990), 195 Ill. App. 3d 221, 245, 552 N.E.2d 313.

In the instant case, the first page of the claim form mailed to prospective class members demonstrated that counterplaintiffs had adequate notice:

"IN ORDER TO BE CONSIDERED FOR CONSTRUCTION BENEFITS YOU MUST RETURN THIS FORM BY MAY 21, 1991. THIS MEANS THE ENVELOPE IN WHICH YOU MAIL THE FORM MUST BE POSTMARKED BY MAY 21, 1991 OR EARLIER. FAILURE TO SUBMIT THIS FORM, COMPLETE OR INCOMPLETE BY MAY 21, 1991 WILL RESULT IN A DENIAL OF YOUR CLAIM. *IF YOU CANNOT ANSWER ALL THE QUESTIONS OR DO NOT HAVE ANY OR ALL THE DOCUMENTS REFERRED TO, SUBMIT THIS FORM ANYWAY.* THE CONSTRUCTION CLAIM EVALUATOR CAN ALSO USE COPIES OF THE DOCUMENTS THAT HE FINDS IN THE FILES OF COMMUNITY BANK AND THE FINANCIAL INSTITUTIONS THAT PURCHASED LOANS FROM COMMUNITY BANK. IT MAY ALSO NOT BE NECESSARY FOR HIM TO SEE ALL OF THE DOCUMENTS LISTED. THEREFORE, YOU MAY HAVE A VALID CLAIM EVEN THOUGH YOU DO NOT HAVE ANY OR ALL OF THE DOCUMENTS LISTED. If any further information is needed from you, the Claim Evaluator will contact you." (Emphasis added.)

This claim form was straightforward. Counterplaintiffs argue that nothing in the claim form advised them that their failure to submit a complete claim form would result in a forfeiture of this claim. We note that a part of the claim form reads "IF YOU CANNOT ANSWER *ALL* THE QUESTIONS." (Emphasis added.) It is our view that the trial court could properly interpret this part of the form as requiring answers to some of the questions rather than requiring no answers at all.

It is also our view that the trial court could properly interpret this form to require more than a mere signing of the form and returning it by mail. We agree with the trial court that counterplaintiffs received adequate notice and were not deprived of any rights.

### III

Counterplaintiffs also assert that the trial court erred in finding the Bank's draft of supplemental instructions to be consistent with the intention of the settlement agreement. We disagree.

■ In construing provisions within a settlement agreement, a court's role is to determine (1) the intention of the parties from the language of the agreement, (2) the apparent objects to be accomplished, (3) the other provisions of the agreement that cast light on

the questions, and (4) the circumstances prevailing at the time of the agreement. *Schwartz v. Florida Board of Regents* (11th Cir. 1987), 807 F.2d 901, 905-06.

The trial court was intimately familiar with the instant case. Moreover, it approved the Bank's draft of supplemental instructions to the construction claims evaluator following a detailed hearing:

> "I'm going to reiterate, Tomasse [*sic*] not a [*sic*] ombudsman and he will make no judgmental calls as to whether or not a person actually has a claim or not. He will follow the instructions.
>
> The burden is on the class member to meet the eligibility. And if he has insufficient information furnished by the putative member of the class he will send the necessary inquiry back to him, give us the additional information. He will not sit as and [*sic*] ombudsman, nor will he sit as a judge."

As for the Bank's draft of supplemental instructions, the trial court provided:

> "Now, I have read the proposed borrowers' draft, I have read the proposed draft of the bank. Most respectfully, the borrowers draft would require Tomasse [*sic*] to hold the claimant's hand continuously and then be furnished, actually, legal advice either through the class lawyers or the evaluator.
>
> Supplemental instructions and directions for the construction claims evaluator furnished by the bank follows and, tracks the settlement agreement which all you people signed and which this Court approved. And they will be adopted."

The trial court recognized that the dispute concerned Tomassi's misinterpretation of the settlement agreement. It, therefore, cautioned Tomassi that the burden was on the class member to meet eligibility, that incomplete forms were to be sent back to the putative member so that he or she could furnish additional information, and that he was not to act as an ombudsman or sit as a judge. The trial court also told Tomassi to discontinue holding the counterplaintiffs' hands.

■ We perceive no error here because the Bank's supplemental instructions tracked the settlement agreement and the original set of instructions: Tomassi was not to act as an ombudsman for the class plaintiffs but rather was to objectively review whether a claim existed and, if it did, he was to decide whether the claimant satisfied all of the eligibility requirements set out in the class settlement agreement. The Bank's draft of supplemental instructions provided that the class members had the burden of demonstrating entitlement to benefits. Moreover, the supplemental instructions further provided:

> "If a class member returns a claim form blank except for his or her signature, then the file is to be closed by the Construction Claims Evaluator and the class member so notified. In some in-

stances, the information on the claim form can best be described as vague and somewhat incoherent and is difficult for the Construction Claims Evaluator to decipher. At that juncture, the Construction Claims Evaluator is to send a Missing Information Request Form to the claimant. That form should request information and documentation in at least as detailed a manner as the original claim form and should identify what information is missing.

> After receiving the missing information form back ***, the Construction Claims Evaluator must immediately provide a copy of the response to the Bank ***. If the missing information form *is not received within 30 days or* fails to furnish all the additional information requested the file is to be closed immediately and the class member notified that his or her 'claim' has been denied." (Emphasis in original.)

The supplemental instructions further emphasized that the construction claim evaluator was not to initiate investigations to determine whether a claim had been made. Nor was he to telephone potential class members and/or make site investigations. Moreover, the original claim form or the follow-up request for missing information had to contain a complaint that *"an identified item of the work order"* that had been originally installed was defective as defined in the settlement agreement. *"A general complaint that the 'work' was bad will not suffice."* Thus, class members had to identify a claim of defect which could then be evaluated against the original contractor's work order. The construction claims evaluator was not authorized to conduct general investigations of whether the original contract had been performed. He was to limit his evaluation to the complaint made and was to evaluate specific claims against the requirements set out in the class settlement agreement.

> Also, in accordance with the settlement agreement and the original set of instructions for the construction claim evaluator, the class member had to

> "have complained about the defect either orally or in writing within one year of the disbursement of the loan."

Included in the Bank's draft of supplemental instructions were alternative methods for satisfying the one-year requirement: where the class member had defective work corrected and submitted proof of payment thereof, or

> *"from a viewing of the allegedly defective construction work or other physical evidence (such as photographs),* it is *obvious that such construction work was defective at the time it was performed or installed."* (Emphasis in original.)

The construction claim evaluator was not to ignore the general one-

year complaint rule and was cautioned only to use the alternative methods where it was unclear whether a complaint was lodged within the one-year period of limitation. The construction claim evaluator was not to consult with the claimant.

Also pursuant to the settlement agreement and the original instructions for the construction claim evaluator, the Bank's draft of supplemental instructions provided that a major defect was defined as:

> "a defect in workmanship and/or materials which (1) renders the premises uninhabitable (i.e., unsafe unsanitary and thus unfit for occupancy) in whole or in part or (2) which presents a danger to the health or safety of its occupants or other persons."

Some examples of major defects included:

> "(1) structural defects which affect the load bearing capacity of the structure or parts thereof,
>
> (2) electrical defects which create a risk of fire or electrical shock, and
>
> (3) defects in HVAC systems such that they fail to provide temperatures required by applicable codes in any part of a living unit."

All defects which were not major defects were deemed minor defects. Using the criteria found in the class settlement agreement, the construction claim evaluator was to determine whether a defect was major or minor.

The Bank's draft of supplemental instructions provided that the following list, though not exhaustive, defined defects which were not to be treated as major:

> "1. Repairs for sheathing and shingles and new downspouts;
> 2. Window awnings;
> 3. Gutters;
> 4. Replastering of a living room;
> 5. Tuckpointing exterior facade of a house;
> 6. One light fixture and switch;
> 7. Receding toilet; and
> 8. Paint."

As far as benefits to be conferred by the class action settlement agreement, the supplemental instructions made clear that the settlement agreement did not require the awarding of benefits for collateral and indirect damages.

We hold that the Bank's draft of supplemental instructions approved by the court were consistent with and did not abrogate or amend the settlement agreement or the original set of instructions to the construction claim evaluator. The additional instructions merely supplemented the set of original instructions. Thus, counterplaintiffs' due process rights were not violated.

## IV

■ Counterplaintiffs assert that the trial court abused its discretion by failing to grant an evidentiary hearing. We disagree.

The decision to hold a full evidentiary hearing on a settlement agreement falls within the trial court's discretion. *Van Berkum v. Christian* (1988), 175 Ill. App. 3d 62, 67, 530 N.E.2d 52.

Here, the trial court was intimately familiar with the facts of the case. Further, the parties' petitions were detailed and the arguments presented at the hearing constituted sufficient information to afford the trial court to come to a determination without holding an evidentiary hearing on the settlement agreement. Thus, the trial court did not abuse its discretion.

Judgment affirmed.

MURRAY, P.J., and GORDON, J., concur.