RITA CORNELL, Plaintiff-Appellee, *v.* ARTHUR LANGLAND, Defendant.—(Old Orchard Country Club, Defendant-Appellant.)

First District (4th Division)  Nos. 81—2307, 81—2473 cons.

Opinion filed September 23, 1982.

Crooks & Gilligan, Ltd., of Chicago (John W. Gilligan, Jacqueline C. Murnane, of counsel), for appellant.

J. Richard Stanton, Ltd., of Chicago, for appellee.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Rita Cornell, brought this action to recover compensatory and punitive damages from the defendant, Old Orchard Country Club (Old Orchard), arising from an accident in which she was struck by a golf ball hit by Arthur Langland. Originally, Langland was also a defendant in this suit but was voluntarily dismissed by the plaintiff at the close of the plaintiff's case. The jury found in favor of the plaintiff and assessed $5,951.55 in compensatory damages and $6,000 in punitive damages against Old Orchard. Old Orchard appeals contending that: (1) the evidence presented at trial was not sufficient to justify the imposition of punitive damages; (2) certain testimony was erroneously admitted; (3) the judgment should be reduced; and (4) the trial court erred in allowing the voluntary dismissal of Langland at the close of the plaintiff's case.

Arthur Langland, called by the plaintiff as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 60), testified that he had played golf for 19 years and had participated in district competition. Before the date of the accident, he had never played at Old Orchard. On that date, he went to the course, paid his fee and picked up a scorecard. When he reached the eighth

tee, he looked at the scorecard to ascertain the distance from the tee to the green. The card showed a yardage of 315 yards and a par of four. He looked down the fairway to see if it was clear to hit his drive and saw the plaintiff and her husband approaching the green. He waited until they reached the green and then proceeded to tee off. His drive struck the head of the plaintiff who was pulling the pin out of the hole.

Steven Blatnak also testified as an adverse witness. He was employed by Old Orchard as the pro manager of the golf course in October of 1979. He testified that Lou Sabo was the pro manager at the time the plaintiff was injured and that Sabo's duties were approximately the same as his. As pro manager, Sabo was an "overseer" of the golf course and as such was responsible to the management of Old Orchard. He was authorized to collect greens fees, deal with patrons and make decisions concerning the safety of the golf course.

Blatnak stated that prior to the occurrence, a second green had been used for the eighth hole. This second green was approximately 40 yards farther than the green on which the plaintiff was injured. The second green created a "dog leg" in the hole. In October of 1980, the Chicago District Golf Association made a laser measurement of the eighth hole. The measurement from the center of the tee to the center of the green where the accident occurred was 232 yards.

Thomas Cornell, the plaintiff's husband, testified that at some time after the accident, he measured the eighth hole with a tape measure and found it to be approximately 217 yards from the tee to the green. On the evening after the accident, he had a conversation with Langland in which Langland stated, "I just can't understand how I could hit a ball that far." After this conversation, Cornell called Old Orchard and spoke with Lou Sabo who, after being advised that the scorecard for the eighth hole indicated 315 yards, stated, "[T]wo years or so we moved that green forward. That's not 315." Sabo also stated, "[W]e got a lot of cards left here, when we print them up again, we will probably change them *** that would cost a lot of money."

On appeal, Old Orchard first contends that the evidence presented at trial was insufficient to demonstrate that Old Orchard was guilty of wilful and wanton conduct which would support an award of punitive damages.

The preliminary question of whether the facts justify the imposition of punitive damages in a particular case is a question of law. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.) Punitive damages are in the nature of a criminal penalty and are not fa-

vored under the law. (*Moore v. Remington Arms Co.* (1981), 100 Ill. App. 3d 1102, 427 N.E.2d 608.) The purpose of imposing punitive damages is to punish the defendant, to teach him not to repeat his intentional, deliberate and outrageous conduct, and to deter others from similar conduct. (*George v. Chicago Transit Authority* (1978), 58 Ill. App. 3d 692, 374 N.E.2d 679.) In *Kelsay*, the court addressed the issue of punitive damages as follows:

> "It has long been established in this State that punitive or exemplary damages may be awarded when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others [citation]." (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353, 359.)

Taken out of context, the words "wanton disregard of the rights of others" appear to indicate that punitive damages may be awarded where the defendant's actions are only slightly greater in degree than mere negligence. As noted by Justice Sullivan in his concurring opinion in *Froud v. Celotex Corp.* (1982), 107 Ill. App. 3d 654, 437 N.E.2d 910, this has resulted in a situation where punitive damages are too readily obtainable in this State.

We believe that a proper interpretation of the law in this area is one which considers the origin and purpose of punitive damages. The awarding of punitive damages originated as a means of punishing defendants in "instances of malice, oppression or gross fraud, *i.e.*, where the manner of performance made the conduct 'outrageous.' " (107 Ill. App. 3d 654, 660, 437 N.E.2d 910, 915.) As previously noted, they are in the nature of a criminal penalty and are not favored under the law. Therefore, it has been held that courts must exercise caution to see that punitive damages are not awarded improperly or unwisely. *Jensen v. Chicago & Western Indiana R.R. Co.* (1981), 94 Ill. App. 3d 915, 419 N.E.2d 578.

The plaintiff's evidence shows that the yardage from the tee to the green on the eighth hole, which was shown on the scorecard as 315 yards, was actually either 217 or 232 yards. Blatnak testified that while he had never heard of a golfer who could hit the ball 315 yards in the air, it would be possible to drive a green 232 yards from the tee. Regarding Old Orchard's knowledge that the hole was mismarked, the plaintiff introduced evidence of Lou Sabo's statement that the yardage was no longer 315 because the green was moved forward and that it would cost a lot of money to change the scorecards. Old Orchard presented evidence that prior to the accident a second

green had been used which made the hole longer and more complex than the green in use when the plaintiff was injured. It contends that the logical inference is that the scorecard was originally printed to reflect the character of the hole when the farther green was in use. Old Orchard maintains that the failure to properly remark the hole was not deliberate or done with a conscious disregard of the rights of others.

In our judgment the evidence presented does not sustain the plaintiff's assertion that "[a] conscious choice was made by [Old Orchard] to mismark the 8th hole of its golf course." At most it shows that Old Orchard was negligent in failing to see that the card properly reflected the true yardage of the eighth hole. Furthermore, even if Old Orchard knew that the card was incorrect, the evidence presented did not show that this was such a dangerous condition that the failure to change the card constituted the type of intentional, deliberate and outrageous conduct which would support the imposition of punitive damages. While the evidence in the present cause may be sufficient to show negligence on the part of Old Orchard, we do not believe that the mismarking of a golf scorecard is the type of conduct which would justify the imposition of punitive damages.

Old Orchard next raises a question involving the agency of Lou Sabo, the pro manager of the golf course at the time of the plaintiff's injury. It contends that the court erred in allowing the jury to consider Sabo's statement that he knew the eighth hole was not 315 yards as the scorecard indicated because the plaintiff failed to establish the elements necessary to treat the statement as an admission of an agent. For a statement to constitute an admission of an agent, it must be shown that the person was an agent or employee, that the statement was made about a matter over which he had actual or apparent authority and that he spoke by virtue of his authority as an agent. *Kapelski v. Alton & Southern R.R.* (1976), 36 Ill. App. 3d 37, 343 N.E.2d 207.

Old Orchard argues that there was no showing that the statement was made regarding a matter over which Sabo had authority, nor that he had authority to make such a statement. We disagree. The evidence showed that as pro manager, Sabo was an "overseer" of the golf course. He was authorized to collect greens fees, deal with patrons and make decisions concerning the safety of the golf course. We believe that it was within his authority to speak with the plaintiff's husband concerning the features of the golf course.

Old Orchard's next contention is that the judgment should be reduced by the amount of damages attributable to other persons. The

jury in its verdict found that Old Orchard was 82.5% negligent and that 17.5% of the negligence involved was attributable to "other persons." Old Orchard claims that by having judgment entered against it in the full amount of the jury verdict, it was unfairly being held responsible for the negligence of another person.

We do not find this argument persuasive. We do not believe that the concept of joint and several liability is inconsistent with comparative negligence or unfair to tortfeasors such as Old Orchard. Joint and several liability has long been the established law in Illinois. (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 374 N.E.2d 460.) The reason for holding each concurrent tortfeasor liable for the total damage is that such damages are more appropriately borne by a tortfeasor than by an innocent injured plaintiff. See *Buehler*.

This rationale remains consistent even in the light of *Skinner v. Reed-Prentice Division Package Machinery Co.* (1977), 70 Ill. 2d 1, 374 N.E.2d 437, and the subsequent adoption of "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1979, ch. 70, par. 301 *et seq.*), which soften the burden of liability for an individual tortfeasor by establishing the rule of contribution among joint tortfeasors in Illinois. The Act specifically says that a plaintiff's right to recover the full amount of his judgment from any one or more of the defendants is not affected by the Act.

Old Orchard has cited us no authority that suggests that comparative negligence and joint and several liability among tortfeasors are inconsistent, and we approve the rationale behind this rule of law.

Old Orchard next claims that the trial court erred in allowing the plaintiff to voluntarily dismiss Langland at the close of the plaintiff's case. Prior to trial, the plaintiff informed the court that she had an agreement with Langland whereby she would not seek to execute any judgment which might be entered against Langland.

The plaintiff's voluntary dismissal of a defendant will not normally be prevented unless the remaining defendants establish that they were prejudiced thereby. (*Turnbull v. Porter* (1964), 55 Ill. App. 2d 374, 206 N.E.2d 97.) Old Orchard claims that it was prejudiced by the admission of certain testimony of the plaintiff's husband. He testified that after the accident he had a conversation with Langland in which Langland stated, "I just can't understand how I could hit a ball that far." Old Orchard claims that this statement had the effect of showing that Langland relied upon the mismarked scorecard in deciding whether to hit the ball. It claims that because of the agreement insulating Langland from the effect of a judgment against him, the court should not have treated this statement as an admission of a

party. Rather, the statement should have been treated as inadmissible hearsay as to Old Orchard.

We do not believe that Old Orchard was prejudiced in any way by the admission of this particular statement. As Old Orchard states in its brief, Langland had already testified that his decision to hit the ball was made in reliance upon the card yardage of 315 yards and the designation of the eighth hole as a par 4.

Accordingly, the judgment of the circuit court is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

JOHNSON, P. J., and LINN, J., concur.