Willie May ANTHONY, et al.,
Plaintiffs–Appellants,

v.

SECURITY PACIFIC FINANCIAL
SERVICES, INCORPORATED,
Defendant–Appellee.

No. 95–1673.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 26, 1995.

Decided Jan. 31, 1996.

Kristi L. Browne, Lawrence Walner, Walner & Associates, Chicago, IL, Daniel A. Edelman, Cathleen M. Combs, Michelle A. Weinberg, O. Randolph Bragg, James O. Latturner (argued), Edelman & Combs, Chicago, IL, for plaintiff-appellant.

Phil C. Neal, Lawrence Benjamin (argued), Ralph T. Russell, Neal, Gerber & Eisenberg, Chicago, IL, for defendant-appellee.

Before BAUER, MANION, and KANNE, Circuit Judges.

MANION, Circuit Judge.

Willie May Anthony is a member of a class of forty-nine plaintiffs who claim that a bank used unfair and deceptive practices to induce them to borrow money for home improvements. Plaintiffs eventually settled with the bank. Because Security Pacific, which had purchased the loans, discarded some loan documents that plaintiffs needed under the settlement agreement, plaintiffs sued in federal court. The question here is whether these class action plaintiffs who seek compensatory and punitive damages under Illinois law meet the minimum jurisdictional amount for diversity jurisdiction. Because it is clear beyond a legal certainty that plaintiffs' claims will not exceed $50,000 as required by 28 U.S.C. § 1332, we affirm the district court's dismissal for lack of subject matter jurisdiction.

**I.**

*A. Factual and Procedural Background*

In a previous proceeding in Illinois state court plaintiffs filed a class action suit against Community Bank of Greater Peoria ("the Bank") alleging that the Bank induced them to take out home improvement loans by unfair and deceptive practices in violation of RICO and state tort law. *See Security Pacific Financial Services v. Jefferson,* 259 Ill. App.3d 914, 198 Ill.Dec. 240, 632 N.E.2d 299 (1st Dist.1994). Security Pacific became a party to the suit when it bought some of the loans originated by the Bank.

The underlying case against the Bank settled in August 1990. Although a named defendant, Security Pacific was not a party to that settlement agreement. Pursuant to that agreement the Bank agreed to pay all or part of the cost of repairing any defective work, or to pay cash directly to the claimants in lieu of paying for the repairs. To qualify for benefits under the settlement agreement an eligible class member had to demonstrate that the home improvement contractor did defective work, that the class member complained orally or in writing within one year of disbursement of the loan, and that the class member was current on his loan payments. Class members then had to submit claims for defective construction work to a construction claims evaluator. The settlement agreement provided that for purposes of the submissions required, the files of the Bank or any transferee institution (*e.g.,* Security Pacific) "shall be made available" to the claims evaluator.

In late October 1993, more than three years after the parties executed the settlement agreement, the Bank contacted Security Pacific with a list of the borrowers on the loans which the Bank had sold to Security Pacific. The Bank requested documents con

cerning each loan. Security Pacific provided those documents in its possession, but it also explained to the construction claims evaluator that due to Security Pacific's document retention guidelines, much of the requested information was no longer available.

In March 1994, based on the partial documentation Security Pacific had provided, the claims evaluator granted in part or denied plaintiffs' claims. As provided for in the settlement agreement, each plaintiff requested a review of the evaluator's decision by an arbitrator. The arbitrator's decision was final and non-appealable.

Dissatisfied with the results of their claims, plaintiffs filed this case in federal court on March 31, 1994. In Count I they claimed Security Pacific interfered with the settlement agreement between them and the Bank because Security Pacific had knowledge of the agreement and its terms yet destroyed documents necessary for plaintiffs to receive benefits. Plaintiffs styled Count II as a claim for "destruction of evidence" and listed substantially the same allegations, but also alleged that Security Pacific knew its documents constituted evidence in the arbitration proceedings and tortiously interfered with each plaintiff's rights in those hearings. Count III sought to recover attorneys' fees. The alleged basis of jurisdiction for this suit was diversity of citizenship under 28 U.S.C. § 1332. The complaint did not allege facts from which the amount of each plaintiff's compensatory damages could be ascertained. It also sought punitive damages.

In response, Security Pacific filed a Fed. R.Civ.P. 12(b)(1) motion to dismiss plaintiffs' case for lack of subject matter jurisdiction because the claims did not reach the $50,000 minimum. With permission from the district court Security Pacific conducted discovery regarding plaintiffs' alleged jurisdictional facts and the factual bases of plaintiffs' purported claims, including their claim for punitive damages. After reviewing plaintiffs' responses, Security Pacific submitted an affidavit to the district court which contained a list of the maximum allowable benefits that each of the plaintiffs could have received under the settlement agreement.

Of the forty-nine plaintiffs, the maximum allowable benefits of six could not be determined. Of the remaining forty-three, thirty-five stood to recover under $4,000. One plaintiff, Joyce Covington, could have received $10,232.39; another couple, Robert and Bernice Hamilton, stood to receive $9,430.50. The remaining six could receive between $4,210 and $7,750. The average amount of the forty-three plaintiffs whose maximum allowable benefit could be determined was $2,881.65. The plaintiffs' only submission in opposition to Security Pacific's motion to dismiss was the declaration of one of its attorneys which summarized the nature of their claims. They did not proffer any evidence to contradict Security Pacific's rendition of the jurisdictional facts, including the average maximum allowable benefit figure.

## B. The District Court Opinion

The district court concluded that plaintiffs had failed to adduce competent proof that the amount in controversy in this suit exceeded $50,000. It therefore granted Security Pacific's motion to dismiss.

First, the district court considered plaintiffs' spoliation of evidence claim. It reasoned that because Illinois law had not recognized a separate cause of action for spoliation of evidence, and it could not foresee that Illinois courts would create such a tort, it appeared to a "legal certainty" that the plaintiffs would not receive any damages on Count II. As to Count I, the tortious interference with contract claim, the district court found no evidence to support plaintiffs' assertion that Security Pacific knowingly destroyed documents. The court also noted that plaintiffs had failed to allege conduct by Security Pacific which rose to the level of "outrageous" and would thereby qualify for punitive damages under Illinois law. Thus, although the parties were completely diverse (plaintiffs from Illinois and Missouri, defendant Security Pacific a citizen of Delaware and California), the district court dismissed the complaint for lack of subject matter jurisdiction because plaintiffs had not pleaded an amount in controversy exceeding $50,000 as required for diversity jurisdiction under 28

U.S.C. § 1332. This court's jurisdiction over the appeal of the district court's order is proper pursuant to 28 U.S.C. § 1291.

## II.

■ This court reviews *de novo* the dismissal of a complaint for lack of subject matter jurisdiction. *Health Cost Controls v. Skinner,* 44 F.3d 535, 536 (7th Cir.1995); *Gammon v. GC Services Ltd. Partnership,* 27 F.3d 1254, 1256 (7th Cir.1994). However, under a Rule 12(b)(1) motion we defer to the district court in the resolution of jurisdictional factual issues, which we review for abuse of discretion. *Pratt Central Ltd. Partnership v. Dames & Moore, Inc.,* 60 F.3d 350, 354 (7th Cir.1995).

■ " 'Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining the jurisdictional amount.' " *Cadek v. Great Lakes Dragaway, Inc.,* 58 F.3d 1209, 1211 (7th Cir.1995) (quoting *Bell v. Preferred Life Society,* 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943), and *Sharp Elec. Corp. v. Copy Plus, Inc.,* 939 F.2d 513, 515 (7th Cir.1991)). Each of the plaintiffs in this case stands to recover much less than the requisite $50,000: even Joyce Covington, who could glean the greatest compensatory damages of all the plaintiffs, must recover nearly $40,000 in punitive damages to exceed the statutory requirement.[1] The plaintiffs in this case would have to recover on average at least $47,118.36 in punitive damages to satisfy 28 U.S.C. § 1332. Thus, a punitive damages recovery is essential in this case for diversity jurisdiction.

■ "Where punitive damages are required to satisfy the jurisdictional requirement in a diversity case, a two-part inquiry is necessary. The first question is whether punitive damages are recoverable as a matter of state law. If the answer is yes, the court has subject matter jurisdiction unless it is clear 'beyond a legal certainty that the plaintiff would under no circumstances be entitled

to recover the jurisdictional amount.' " *Cadek,* 58 F.3d at 1212 (quoting *Risse v. Woodard,* 491 F.2d 1170, 1173 (7th Cir.1974)). When a claim for punitive damages makes up the bulk of the amount in controversy, and may even have been colorably asserted solely to confer jurisdiction, we should scrutinize that claim closely. *E.g. Packard v. Provident Nat. Bank,* 994 F.2d 1039, 1046 (3d Cir.), *cert. denied sub nom, Upp v. Mellon Bank,* —— U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993). "If uncontested, the courts will accept the plaintiff's good faith allegation of the amount in controversy unless it 'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount.' Where, as here, a defendant challenges the plaintiff's allegation of the amount in controversy, the plaintiff must support its assertion with 'competent proof.' Competent proof means 'proof to a reasonable probability that jurisdiction exists.' " *Rexford Rand Corp. v. Ancel,* 58 F.3d 1215, 1218 (7th Cir. 1995) (citing *inter alia St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938), and *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936)); *see also Wellness Community v. Wellness House,* 70 F.3d 46, 49 (7th Cir.1995) (requiring competent proof of jurisdictional facts).

■ "It is a familiar rule that when several plaintiffs assert separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount to be within the jurisdiction of the district court, and that those amounts cannot be added together to satisfy jurisdictional requirements." *Clark v. Paul Gray, Inc.,* 306 U.S. 583, 589, 59 S.Ct. 744, 748–49, 83 L.Ed. 1001 (1939); *Schreiber v. Lugar,* 518 F.2d 1099, 1101 (7th Cir.1975). That plaintiffs have filed a class action suit does not alter this rule. *Zahn v. International*

---

1. It is necessary to exceed, not just to achieve, $50,000 in controversy. Title 28 U.S.C. § 1332 expressly states that the "district courts have original jurisdiction of all civil actions where the matter in controversy *exceeds* the sum or value of

$50,000, exclusive of interest and costs...." (emphasis supplied). *E.g., Bradford Nat. Life Ins. Co. v. Union State Bank,* 794 F.Supp. 296, 297–98 (E.D.Wis.1992).

*Paper Co.*, 414 U.S. 291, 301, 94 S.Ct. 505, 512, 38 L.Ed.2d 511 (1973).[2]

### A. Tortious Interference With Contract Claim

.Plaintiffs appeal the district court's ruling that they failed to allege Security Pacific acted outrageously in their tortious interference with contract claim, thereby disqualifying them from punitive damages under Illinois law.

■■■ Illinois courts do not favor punitive damages and insist that plaintiffs establish "gross fraud ... 'or other extraordinary or exceptional circumstances clearly showing malice or willfulness.'" *Europlast, Ltd. v. Oak Switch Systems, Inc.*, 10 F.3d 1266, 1276 (7th Cir.1993) (and citations therein); *see also AMPAT/Midwest, Inc. v. Illinois Tool Works*, 896 F.2d 1035, 1043 (7th Cir.1990) (Illinois courts take dim view of punitive damages). This punitive damages standard employs exacting adjectives. Under this legal standard we consider the letter of the complaint as well as plaintiffs' responses to Security Pacific's discovery.

■■■ The complaint in this case does not allege an aggravated or egregious form of tort; at most it avers that Security Pacific "had actual knowledge of the agreement and knew or intended that the plaintiffs would be deprived of benefits under the agreement by the destruction of the documents." Although plaintiffs allege intentional conduct in Count I, this is insufficient under Illinois law to claim punitive damages. *Europlast*, 10 F.3d at 1276 (citing *Cornell v. Langland*, 109 Ill. App.3d 472, 65 Ill.Dec. 130, 132, 440 N.E.2d 985, 987 (Ill.App. 1 Dist.1982)); *Loitz v. Remington Arms*, 138 Ill.2d 404, 150 Ill.Dec. 510, 515, 563 N.E.2d 397, 402 (1990) (punitive "damages can be awarded only for ... con-

duct involving some element of outrage similar to that usually found in crime."). Security Pacific correctly observes that if simply alleging intentional conduct sufficed to state a claim for punitive damages, nearly any claimant could satisfy the amount in controversy requirement merely by alleging an intentional tort. That, of course, is not the law. Therefore, the allegations in Count I of the complaint do not set forth a basis for punitive damages.

■■ When Security Pacific put plaintiffs to their proof by conducting jurisdictional discovery, the burden shifted to plaintiffs to advance "proof to a reasonable probability" of the facts necessary to establish federal jurisdiction. *Rexford Rand Corp.*, 58 F.3d at 1218 (and citations therein). To meet this burden, plaintiffs had to proffer facts sufficient to satisfy the legal standard for punitive damages. In response to an interrogatory seeking the basis of their punitive damages claim, plaintiffs stated no facts other than those alleged in the complaint: Security Pacific knew of the settlement agreement but nonetheless destroyed the documents after a certain amount of time lapsed. Moreover, the request for Security Pacific's documents was not made until more than three years after the settlement agreement had been executed. Plaintiffs offered no explanation for this delay, nor did they offer any evidence to rebut Security Pacific's assertion that any documents destroyed were done so in good faith pursuant to its document retention policy. Over and above these facts, plaintiffs admitted that Security Pacific had no liability under the settlement agreement; it is thus difficult to conceive of any gain Security Pacific could

---

2. Because none of the plaintiffs in this case exceeds the jurisdictional amount requirement, we need not reach the issue of whether or not the district court could exercise supplemental jurisdiction under 28 U.S.C. § 1367 over members of the class who did not meet the amount-in-controversy requirement. *See In re Abbott Labs.*, 51 F.3d 524 (under plain meaning analysis, the Judicial Improvement Acts of 1990, as codified in part at 28 U.S.C. § 1367, overrules *Zahn* in the class action context and authorizes district court to exercise supplemental jurisdiction over class members who did not each meet amount-in-con-

troversy requirement), *reh'g en banc denied*, 65 F.3d 33 (5th Cir.1995); *see also Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045–46 n. 9 (3d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 373 (1993) (noting conflict among authorities on question but declining to resolve it). Even those courts which have concluded that § 1367 overrules *Zahn* continue to apply the non-aggregation rule to determine whether any individual plaintiff has met the amount-in-controversy as a threshold matter. *See, e.g., Gilman v. Wheat, First Securities, Inc.*, 896 F.Supp. 507, 509 (D.Md.1995).

achieve through destroying documents.[3] These facts do not constitute competent proof of Security Pacific's alleged intent to deprive plaintiffs of benefits, much less the "aggravating and egregious" circumstances that would justify a punitive damages award. The plaintiffs have not carried their burden of proof on the jurisdictional facts relating to punitive damages on Count I.

The district court correctly concluded that by failing to be able to allege "malicious, willful, or outrageous" conduct plaintiffs disqualified themselves from punitive damages under Illinois law. Further, considering the record after Security Pacific's jurisdictional discovery, the district court did not abuse its discretion when it determined that under no circumstances could plaintiffs recover punitive damages on their tortious interference with contract claim such that the jurisdictional amount of their allegations in Count I would exceed $50,000.

### B. Spoliation of Evidence Claim

The plaintiffs also dispute the district court's conclusion that Illinois law does not recognize their spoliation of evidence claim. The court ruled that without that claim, it appeared to a "legal certainty" that the plaintiffs would not receive any damages on Count II of their complaint.

■ The district court dismissed plaintiffs' spoliation of evidence claim based on the decision of the Supreme Court of Illinois in *Boyd v. Travelers Ins. Co.*, 166 Ill.2d 188, 193, 209 Ill.Dec. 727, 730, 652 N.E.2d 267, 270 (1995), which did not recognize a separate cause of action for the torts of negligent or intentional spoliation of evidence. That court subsequently modified its decision on denial of rehearing, 166 Ill.2d 188, 209 Ill. Dec. 727, 652 N.E.2d 267 (June 22, 1995). In doing so it recognized that a claim for *negli-*

*gent* spoliation of evidence could be stated under existing Illinois negligence law without creating a new tort; it did not reach the question whether to recognize a tort for *intentional* spoliation of evidence. 166 Ill.2d at 193, 209 Ill.Dec. at 730, 652 N.E.2d at 270.

This clarification by the Supreme Court of Illinois does not alter this court's analysis, however, as plaintiffs seek damages under the theory of intentional spoliation of evidence. The failure of Illinois to recognize the cause of action upon which plaintiffs rely precludes consideration of this claim. We obviously cannot say that punitive damages are recoverable as a matter of state law on a cause of action not recognized by that state's highest court. Further, as with Count I of the complaint, Count II merely alleges that Security Pacific "knew its documents constituted evidence in the arbitration proceedings." It does not allege malicious, willful, or outrageous conduct. When put to their proof, plaintiffs were unable to proffer competent evidence of such conduct. As discussed above, this failure is fatal under Illinois law.

■ Finally, even if plaintiffs' claim in Count II had a basis in law (and we have concluded it does not) and allegations of malicious or wanton conduct could be inferred from the complaint, plaintiffs would have to achieve a punitive damages recovery roughly 17.35 times their actual damages just to satisfy the jurisdictional amount.[4] Punitive damage awards for two or three times actual damages have been sustained. *See, e.g., DeRance, Inc. v. PaineWebber, Inc.*, 872 F.2d 1312, 1329–30 (7th Cir.) (citations therein), *reh'g denied*, (1989) (ratio of punitive to compensatory awards of 2.7 does not suggest unreasonable amount). But a punitive damage recovery in such a large multiple of a compensatory recovery as 17.35 times

---

**3.** Plaintiffs attempt to argue that they had insufficient time to discover competent proof underlying their punitive damages claim. Of course, this discovery should have been accomplished before plaintiffs filed their complaint and their attorneys signed the pleading containing such an allegation. Further, Security Pacific's motion to dismiss was pending for nearly eight months, during which time plaintiffs never requested nor initiated any jurisdictional discovery.

**4.** Because there is no dispute that the average plaintiff could recover $2,881.65, the vast majority of each plaintiff's alleged damages— $47,118.36, or 17.35 times the compensatory damages amount—would have to consist of a recovery of punitive damages.

stretches the normal ratio, and would face certain remittitur. *Id.* at 1330. Considering the nature of their claim and the amount of the potential compensatory damage awards on that claim, a punitive damages recovery if rendered for the amount necessary to exceed $50,000 would be excessive. *Cf. Sharp Elec. Corp. v. Copy Plus, Inc.,* 939 F.2d 513, 515 (7th Cir.1991) (applying this standard from *Bell v. Preferred Life Soc.,* 320 U.S. 238, 243, 64 S.Ct. 5, 7, 88 L.Ed. 15 (1943)).

## III.

"[I]t does not follow that the court must accept the plaintiff's perspective and proceed to adjudicate on the merits every case in which the lawyers can keep straight faces when making their presentations." *Pratt,* 60 F.3d at 352. Plaintiffs' punitive damage recoveries would need to account for on average nearly 95% of the statutory amount, and 17.35 times actual damages, to achieve jurisdiction. This fails the straight face test in view of the facts and claims pleaded in this case. The plaintiffs' failure to meet their burden to advance competent proof in support of their claims for punitive damages on either cause of action in the complaint, as well as the absence of a valid claim for spoliation of evidence, requires that we conclude to a legal certainty that plaintiffs could not receive damages exceeding $50,000, and thus that jurisdiction over this case is not proper in federal court. Accordingly, the district court's decision is

AFFIRMED.