JERRY DUIGNAN, Plaintiff-Appellee, v. LINCOLN TOWERS INSURANCE AGENCY, INC., Defendant-Appellant.

First District (2nd Division) No. 1—95—0137

Opinion filed June 18, 1996.

Rallo & Tepper, of Chicago (David T. Rallo and Lawrence D. Mishkin, of counsel), for appellant.

Kralovec, Marquard, Doyle, & Gibbons, Chartered, of Chicago (Nancy J. Arnold and Timothy E. Takash, of counsel), for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Jerry Duignan filed an amended complaint against Lincoln Towers Insurance Agency, Inc. (Lincoln Towers), alleging a breach of fiduciary duty and a violation of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1992)). The circuit court granted Duignan partial summary judgment and awarded him $23,379.50 in attorney fees and $150,000 in punitive damages. Lincoln Towers appeals. For the following reasons, the grant of summary judgment is affirmed, but the award of attorney fees and the award of punitive damages are vacated, and the cause is remanded.

On November 2, 1989, Duignan purchased a 1985 Chevy Blazer from O'Connor Chevrolet and requested automobile insurance from Lincoln Towers, which was located in the O'Connor Chevrolet dealership building. Lincoln Towers procured an insurance policy for Duignan from Safeway Insurance Agency (Safeway) effective November 3, 1989, to November 3, 1990. Lincoln Towers also arranged for Duignan to finance the insurance premium of $886 through Illinois Vehicle Premium Finance Company (Illinois Vehicle), also located in

O'Connor Chevrolet's building. Duignan made monthly cash payments to Lincoln Towers, which forwarded them to Illinois Vehicle.

On December 12, 1989, following Duignan's failure to make his monthly payment, Lincoln Towers requested that Safeway cancel his insurance policy. On January 3, 1990, after receiving payment, Lincoln Towers requested that Safeway reinstate the policy. Safeway did so. On August 12, 1990, Lincoln Towers again requested that Safeway cancel the policy. On August 16, 1990, Safeway sent Duignan notification that his insurance policy would be cancelled on August 27, 1990. On September 24, 1990, Lincoln Towers requested that Safeway reinstate the policy.

On September 11, 1990, Duignan's vehicle was destroyed in a fire. On October 18, 1990, in response to a request for payment from Duignan, Lincoln Towers explained that it cancelled his policy for nonpayment effective August 27, 1990, and did not seek a reinstatement until September 24, 1990, the date on which it received a check from Duignan's mother, made payable to Lincoln Towers and dated August 21, 1990.

On December 5, 1990, Duignan filed an action in the law division of the circuit court against Safeway. After Lincoln Towers was added as a defendant, an arbitration panel found in favor of the defendants. Duignan rejected the panel's decision. On October 22, 1991, he filed the instant action for declaratory judgment against Safeway and Lincoln Towers in the chancery division. On March 26, 1992, Duignan voluntarily dismissed the law division action.

In the chancery action, Safeway maintained that it cancelled Duignan's policy at Lincoln Towers' request because it considered Lincoln Towers to be the agent of Duignan. Lincoln Towers offered into evidence a premium financing agreement that authorized Illinois Vehicle to cancel Duignan's policy for default. The agreement was not signed by Duignan, but rather by N. Tidwell, as agent for Duignan. Also, the agreement was dated November 16, 1990, after the loss, the cancellation, and the request for reinstatement of the insurance.

On August 25, 1993, the chancery court found that the cancellation of Duignan's insurance policy was invalid because it was effected by Lincoln Towers without authority. As a result, Duignan had full coverage under the policy, and summary judgment was granted in his favor. The case was transferred to the law division for a hearing on damages, fees, and costs. Safeway then settled with Duignan for $7,500, and the claim against Safeway was dismissed.

On January 14, 1994, Duignan filed an amended complaint against Lincoln Towers for breach of fiduciary duty and violation of

the Consumer Fraud Act. Both parties filed motions for partial summary judgment. The circuit court granted summary judgment in Duignan's favor, ruling that Lincoln Towers was Duignan's agent and should not have cancelled his policy.

A trial was held on damages. Duignan testified that at the time he purchased the car he also purchased insurance through "Marie" at Lincoln Towers. Each month he came into Lincoln Towers and gave Marie a cash payment. The one time he paid by check, the one dated August 21, 1990, it was made payable to Lincoln Towers. He did not receive notice of the cancellation of his policy until he called Marie to inform her about the fire. He agreed to pay his attorneys at a rate of $90 per hour, and the itemization of attorney fees which was entered into evidence reflected the legal work done on his behalf.

Kathleen Johnson, an attorney in the office of Kralovec, Marquard, Doyle & Gibbons, testified for Duignan as an expert witness to the reasonableness and documentation of his requested attorney fees. Johnson's expertise was based on her experience as an attorney and as a claim specialist who reviewed billings of attorney fees and costs for an insurance company. Johnson testified that the instant bills and costs were reasonable.

Sam Shelist, an expert regarding attorney fees, testified for Lincoln Towers that although the billed hourly rate of $90 was reasonable, some of the billings were deficient for failing to indicate which attorney performed the described services, the relationship between the requested fees and Duignan's net recovery was not reasonable, and the decision to continue litigation after settling with Safeway was not reasonable.

Nancy Marie Tidwell testified that she was the outside sales manager of both Lincoln Towers and Illinois Vehicle. Employees of the two companies did not view them as separate. Although the signature on the premium financing agreement produced at trial was in her name, she did not sign the document. Employees from both companies had her permission to sign her name on documents.

Renee Blustein, the general manager of Lincoln Towers, testified that Lincoln Towers and Illinois Vehicle were related companies. Lincoln Towers sought the cancellation of Duignan's policy at the request of, and as a courtesy to, Illinois Vehicle. Following the commencement of this litigation, Lincoln Towers ceased the practice of issuing requests for cancellation of insurance.

Mary Brennan, the underwriting manager at Lincoln Towers, testified that Lincoln Towers no longer sent out requests for policy cancellations. During the course of the instant litigation, Brennan signed a series of contradictory affidavits about the request to cancel

Duignan's policy: a January 1992 affidavit stated that Lincoln Towers issued a request to cancel pursuant to the authority granted to Illinois Vehicle; an October 1992 affidavit stated that Lincoln Towers did not cancel the policy; and a June 1993 affidavit stated that although the request to cancel bore the name "Lincoln Towers" at the top of the preprinted form, the request was caused to be sent by Illinois Vehicle.

Jill Greenbaum, a Lincoln Towers employee called as an adverse witness by Duignan, testified that the two companies had a corporate relationship; she was not an employee of Illinois Vehicle, yet she accepted payments and cancelled customers' insurance policies on behalf of Illinois Vehicle; and these practices had ceased.

The circuit court found the request and itemization of attorney fees to be sufficiently detailed and reasonable and awarded attorney fees of $23,379.50 for fees incurred during the initial action against Lincoln Towers and Safeway and those incurred during the instant action against Lincoln Towers. The court also awarded punitive damages for Lincoln Towers' wrongful conduct in requesting the cancellation and for its conduct during the litigation of the case. The court stated that although Lincoln Towers did not act with malice or an evil motive in requesting the cancellation, it did act with reckless indifference to the rights of Duignan. That action, the court stated, warranted punitive damages of less than $10,000. Regarding the conduct during litigation, the court found that Lincoln Towers designed to harass and punish Duignan, and to discourage him from pursuing the matter. Lincoln Towers' strategy was to "spend plaintiff out of the courthouse." The defense, the court said, went beyond the bounds of reasonable, aggressive advocacy and caused a great waste of court resources. The court felt a need to award a high amount of damages to punish Lincoln Towers and to deter others from litigating in such an obstructive manner. In particular, the court cited the post-dated premium financing agreement which it found to have been created outside the ordinary course of business and specifically for litigation. The court awarded a total of $150,000 in punitive damages.

I

Lincoln Towers contends that the circuit court erred in granting summary judgment. Orders of summary judgment are reviewed *de novo* to determine whether any genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

■ Lincoln Towers argues that a question of fact exists as to whether it was Duignan's agent at the time that it issued the request to cancel. Generally, the question of whether an insurance broker is the agent of an insured is one of fact. However, if the evidence clearly shows the existence of an agency relationship, it becomes a matter of law. *Davidson v. Comet Casualty Co.*, 89 Ill. App. 3d 720, 723, 412 N.E.2d 19 (1980).

■ Lincoln Towers contends that the agency relationship ended after it procured the insurance policy for Duignan. An insurance broker is not a general agent, but rather is a special agent for a single objective. Once the objective is accomplished, the broker no longer owes a fiduciary duty to the insured. *Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Ill. App. 3d 75, 80, 385 N.E.2d 376 (1979). However, the instant facts clearly indicate that Lincoln Towers continued to act as Duignan's agent after the insurance policy was obtained. In accepting Duignan's monthly payments and forwarding them to Illinois Vehicle, Lincoln Towers maintained an agency relationship. Furthermore, a third party treated their relationship as one of agency. Safeway maintained that it acted in accordance with Lincoln Towers' requests because it believed that Lincoln Towers was acting as Duignan's agent. Accordingly, we find, as a matter of law, that an agency relationship continued to exist and that summary judgment was properly granted.

## II

Lincoln Towers contends that the circuit court erred in awarding attorney fees of $23,379.50.

## A

■ Lincoln Towers argues that the circuit court had no power to award attorney fees because there is no right to such fees for breach of a fiduciary duty. Litigation expenses are generally not allowable to the successful party in the absence of a statute or a contractual agreement between the parties. *Glass v. Burkett*, 64 Ill. App. 3d 676, 683, 381 N.E.2d 821 (1978). However, attorney fees and costs incurred as a result of a defendant's conduct may be awarded as a form of damages. *Bituminous Casualty Corp. v. Commercial Union Insurance Co.*, 273 Ill. App. 3d 923, 928-29, 652 N.E.2d 1192 (1995) (attorney fees incurred in a third-party complaint that was the result of defendant's breach of contract are recoverable); *Sorenson v. Fio Rito*, 90 Ill. App. 3d 368, 372-74, 413 N.E.2d 47 (1980) (attorney fees expended to obtain refunds of tax penalties assessed as a result of defendant's negligence are recoverable). A plaintiff can recover the attorney fees expended in an effort to cure the damage caused by the defendant, but may not

recover fees expended in the action against the defendant. *Sorenson*, 90 Ill. App. 3d at 372. Here, Duignan can recover the attorney fees he incurred to obtain the $7,500 from Safeway because that expense was directly attributable to Lincoln Towers' actions. He may not, however, recover as damages any attorney fees incurred during the instant action against Lincoln Towers.[1] Thus, a portion of the award was proper and a portion was erroneous. We vacate the award and remand the action to the circuit court for a reimposition of attorney fees.[2]

### B

■ Lincoln Towers contends that Duignan may not recover attorney fees related to the original law division case that he dismissed because he was not successful. However, a party need not be successful to obtain attorney fees as an element of damages. In *Sorenson*, attorney fees expended in an unsuccessful attempt to obtain tax penalty and interest charge refunds were recoverable. *Sorenson*, 90 Ill. App. 3d at 370.

### C

■ Lincoln Towers also contends that the requested fees were not reasonable. Only reasonable fees are reimbursable, and the determination of reasonableness is left to the sound discretion of the circuit court. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 983, 518 N.E.2d 424 (1987). Here, the circuit court, based on testimony it heard and its years of experience, determined that the descriptions

---

[1] We note that attorney fees incurred during the instant action may be awarded pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137) if deemed appropriate by the circuit court.

[2] We also note that Duignan may not collect attorney fees under the Consumer Fraud Act. To prevail on a claim under the Consumer Fraud Act, and to be eligible for attorney fees, a plaintiff must show that a defendant concealed, suppressed, or omitted a material fact with the intent to induce reliance, and that justifiable reliance occurred. *Lidecker v. Kendall College*, 194 Ill. App. 3d 309, 314, 550 N.E.2d 1211 (1990).

Duignan has not established that a material fact was concealed or that Lincoln Towers intended to induce his reliance. Duignan argues that Lincoln Towers' close relationship with Illinois Vehicle was a material fact. However, the circuit court found the relationship to be immaterial because it did not think that Duignan would have appreciated the significance of such a relationship even if he had known about it. That finding is not unreasonable. Nor has Duignan offered any evidence that Lincoln Towers intended to induce his reliance by hiding the essence of its relationship with Illinois Vehicle.

in the fee petitions were adequate. As Lincoln Towers fails to offer convincing evidence that the circuit court's judgment was erroneous, its determination, except for that attributable to the instant action, will not be disturbed.

## D

■ Lincoln Towers also contends that the award of attorney fees on an hourly basis was erroneous because Duignan and his attorneys had a contingency fee arrangement. To recover attorney fees, a party must show that an obligation was incurred as a result of the defendant's wrongdoing. *Omni Overseas Freighting Co. v. Cardell Insurance Agency*, 78 Ill. App. 3d 639, 645, 397 N.E.2d 112 (1979). Lincoln Towers argues that if Duignan and his attorneys had a contingency agreement, then he was not obligated to pay the hourly rates listed in the requested fees, and the hourly fees are not recoverable. Lincoln Towers cites a letter to Duignan from his attorneys as evidence of a contingency arrangement. The letter, which accompanied a check for Duignan's share of the proceeds from the Safeway settlement, explained that the attorneys retained $2,500 as legal fees (one-third of the settlement) and $3,205.29 as litigation expenses. On direct and cross-examination, Duignan offered extensive testimony on the fee arrangement with his attorneys. Although he mentioned a "percentage-type" deal once, he stated that he was billed on an hourly basis, the itemized bill was legitimate, he was obligated to pay the bill in full, and the amount retained by the attorneys from the Safeway settlement was only part of the fees and expenses that he owed. The circuit court heard all this testimony and found the itemized bill to be legitimate and reasonable. Lincoln Towers has not offered sufficient evidence to show that the circuit court abused its discretion.

## III

The circuit court awarded $150,000 in punitive damages: "less than five figures" ($10,000) attributable to the request to cancel Duignan's insurance and the balance attributable to Lincoln Towers' conduct during litigation. Lincoln Towers contests both portions of the award.

■ Punitive damages are in the nature of a criminal penalty and are not favored under the law. The purpose of awarding them is to punish the defendant, to teach him not to repeat his unacceptable conduct, and to deter others from similar conduct. *Cornell v. Langland*, 109 Ill. App. 3d 472, 474-75, 440 N.E.2d 985 (1982).

## A

■ Lincoln Towers contends that the circuit court had no author-

ity to award punitive damages based on its conduct during litigation. Punitive damages must derive from the wrongful conduct giving rise to a cause of action. *In re Estate of Wernick*, 127 Ill. 2d 61, 83-84, 535 N.E.2d 876 (1989). However, Supreme Court Rule 137, which is penal in nature, permits the court to impose an appropriate sanction on an attorney or party who files an unfounded pleading or motion for an improper purpose such as harassment, delay, or needless expense to the other party. 134 Ill. 2d R. 137; *Kennedy v. Miller*, 221 Ill. App. 3d 513, 525, 582 N.E.2d 200 (1991), *appeal denied*, 144 Ill. 2d 634, 591 N.E.2d 23 (1992); *Riverdale Bank v. Papastratakos*, 266 Ill. App. 3d 31, 43, 639 N.E.2d 219 (1994). Duignan did not specifically request damages under Rule 137, and the circuit court did not cite Rule 137 when announcing its judgment. We note that Rule 137 may be the basis for sanctions despite the lack of a specific mention. *In re C.K.*, 214 Ill. App. 3d 297, 299, 573 N.E.2d 378 (1991). In *In re C.K.*, the court found that the language and tenor of the circuit court's order indicated that fees were awarded as a Rule 137 sanction. *In re C.K.*, 214 Ill. App. 3d at 299. However, in the instant case, the circuit court explicitly mentioned "punitive damages" several times, and we are unsure whether it intended the award to be sanctions under Rule 137. Accordingly, we vacate the award of punitive damages and remand for a clarification of the circuit court's intentions.

B

■ Lincoln Towers also contends that the award of damages relating to the request to cancel insurance was erroneous. Punitive damages may be awarded for a violation of duty springing from a relation of trust or confidence. *Home Savings & Loan Ass'n v. Schneider*, 108 Ill. 2d 277, 284, 483 N.E.2d 1225 (1985). Punitive damages are appropriate if the defendant's acts are done with an evil motive or a reckless indifference to rights of others. *Loitz v. Remington Arms Co.*, 138 Ill. 2d 404, 415-16, 563 N.E.2d 397 (1990). The award of punitive damages will not be upset absent an abuse of discretion. *Glass*, 64 Ill. App. 3d at 683.

Here, although the circuit court stated that Lincoln Towers' request of cancellation was not malicious, outrageous, or evil, it found the act constituted "reckless indifference" to the rights of Duignan. That finding is sufficient to support an award of punitive damages, and Lincoln Towers has not presented any evidence that the court's determination was an abuse of discretion.

Lincoln Towers also argues that the award was inappropriate because it has ceased its practice of requesting the cancellation of insurance policies. However, punitive damages are awarded to punish

272

as well as to deter future improper conduct. *Cornell*, 109 Ill. App. 3d at 474-75. A current change of behavior does not insulate a party from punishment due to prior improper acts.

We vacate the award of $150,000 in punitive damages and remand for the imposition of a proper award of punitive damages and of Rule 137 sanctions, if any.

For the foregoing reasons, the judgment of the circuit court is affirmed in part, vacated in part, and remanded in part.

Affirmed in part; vacated in part and remanded in part.

HARTMAN, P.J., and BURKE, J., concur.