Ripple, Circuit Judge, concurring in part and dissenting in part.
I agree with the majority that federal question jurisdiction is lacking. However, I reach a different conclusion with respect to diversity jurisdiction. Specifically, I cannot agree that we know, to a "legal certainty," that Messrs. Webb and Beversdorf cannot recover the damages that they allege, including the attorneys' fees expended in the earlier arbitration.
A defendant seeking removal of a state action to federal court must file a notice of removal "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).
"By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." As the Supreme Court explained in Dart Cherokee Basin Operating Co. , "Congress, by borrowing the familiar 'short and plain statement' standard from Rule 8(a), intended to 'simplify the "pleading" requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.' "
Roppo v. Travelers Commercial Ins. Co ., 869 F.3d 568, 578 (7th Cir. 2017) (alteration in original) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens , --- U.S. ----, 135 S.Ct. 547, 553, 190 L.Ed.2d 495 (2014) ). Therefore, "[j]ust as we generally accept the plaintiff's good-faith allegations of the amount in controversy to establish diversity jurisdiction, 'when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.' " Id . at 579 (footnote omitted) (quoting Dart Cherokee Basin Operating Co ., 135 S.Ct. at 553 ). "Once this has been done, and supported by proof of any contested jurisdictional facts, the presumption is the one stated in St. Paul Mercury [Indemnity Co v. Red Cab Co ., 303 U.S. 283, 291, 58 S.Ct. 586, 82 L.Ed. 845 (1938) ]: the estimate of the dispute's stakes advanced by the proponent of federal jurisdiction controls unless a recovery that large is legally impossible." Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co. , 637 F.3d 827, 830 (7th Cir. 2011).
We also have observed that the legal certainty test sets a high bar for excluding federal subject matter jurisdiction "for good reason: District courts should not get bogged down at the time of removal in evaluating claims on the merits to determine if jurisdiction exists." Carroll v. Stryker Corp ., 658 F.3d 675, 681 (7th Cir. 2011). Thus, typical examples of claims considered " 'legally impossible' for jurisdictional purposes" involve "statutory or contractual cap[s] on damages." Id .
With this principle in mind, we must turn to Illinois state law. Here, it is important not to get off on the wrong foot by how we characterize this action. It is not an attorneys' fees action; it is a damages action based on the breach of a contract. This distinction is very important. Illinois normally would not allow the recoupment of attorneys' fees for success in maintaining *862 the present action. It does recognize, however, that attorneys' fees incurred in an earlier action can be a measure of damages for an individual's misfeasance in that earlier action. See Duignan v. Lincoln Towers Ins. Agency , 282 Ill.App.3d 262, 217 Ill.Dec. 519, 667 N.E.2d 608, 613 (1996).
The Illinois appellate court explained the principles underlying this rule, and demonstrated their application, in Sorenson v. Fio Rito , 90 Ill.App.3d 368, 45 Ill.Dec. 714, 413 N.E.2d 47 (1980). In Sorenson , a widow had retained an attorney, Fio Rito, to handle her husband's estate. Rather than attending to it, however, the attorney let it languish in his office; taxes went unpaid, and tax authorities imposed penalties. Sorenson then retained a new attorney to handle the estate, and through that attorney's unsuccessful attempts to obtain refunds of penalties and interest, she incurred attorneys' fees. See id ., 45 Ill.Dec. 714, 413 N.E.2d at 50. Sorenson then brought an action against the first attorney, Fio Rito, for damages. Among the damages that she claimed were fees paid to her second attorney for challenging the penalties. The trial court ruled that Sorenson could recover these damages from Fio Rito.
Fio Rito maintained in the state appellate court that the American Rule, which generally precludes a plaintiff from recovering attorneys' fees expended to bring a lawsuit against a wrongdoer, foreclosed such damages. See id ., 45 Ill.Dec. 714, 413 N.E.2d at 51. The appellate court disagreed. It explained that Fio Rito was "confus[ing] the exception with the general rule. The general rule in Illinois is that one who commits an illegal or wrongful act is liable for all of the ordinary and natural consequences of his act." Id . The American Rule governing attorneys' fees limited this general rule, but only in situations "where a successful litigant seeks to recover his costs in maintaining the lawsuit"; it was not "intended to preclude a plaintiff from recovering losses directly caused by the defendant's conduct simply because those losses happen to take the form of attorneys' fees." Id ., 45 Ill.Dec. 714, 413 N.E.2d at 51-52. Applying these principles to Sorenson's claim, the court stated:
The plaintiff here is not attempting to recover the attorneys' fees she expended in bringing this lawsuit. Rather, she seeks to recover losses incurred in trying to obtain refunds of tax penalties which were assessed against her solely as a result of the defendant's negligence. Had the plaintiff been forced to hire an accountant to repair the damage caused by the defendant's conduct, she would undoubtedly have been entitled to recover the accountant's fee as an ordinary element of damages. There is no basis in logic for denying recovery of the same type of loss merely because the plaintiff required an attorney instead of an accountant to correct the situation caused by the defendant's neglect. In holding the defendant liable for the plaintiff's losses, we are not violating the policy against "penalizing" a litigant for defending a lawsuit. We are simply following the general rule of requiring a wrongdoer to bear the consequences of his misconduct.
Id ., 45 Ill.Dec. 714, 413 N.E.2d at 52. The facts of our case are different. Here, the plaintiffs are demanding that the arbitrator in the underlying matter reimburse them for the attorney fees that they incurred because of the arbitrator's alleged lapse. The principle nevertheless remains the same.
As the majority notes, most cases addressing the recovery of attorneys' fees involve situations in which "the defendant's wrong forced the plaintiff into litigation with a third party"-"when the defendant *863 caused the third-party suit" as opposed to simply "caus[ing] the legal fees to increase in an already existing third-party suit." See Majority Opinion 858 (collecting cases). However, the frequent occurrence of a fact pattern does not impose an analytical limitation on a principle unless some animating component of that principle limits application to the particular fact pattern. Here, the majority points to no such consideration. Nor does Illinois case law suggest any such limitation. Indeed, a colleague on the district court has written that it demonstrates the opposite. In Certain Underwriters at Lloyd's, London v. Johnson & Bell, Ltd ., No. 10 C 7151, 2011 WL 3757179 (N.D. Ill Aug. 25, 2011), the underwriters had hired Johnson & Bell to analyze their coverage responsibilities in two lawsuits and "to prepare and file complaints for declaratory judgment as necessary in connection with both suits." Id . at *1. The underwriters later brought an action in federal court asserting state law malpractice claims against Johnson & Bell related to its representation in the two earlier actions. Specifically, the underwriters alleged that it incurred unnecessary attorneys' fees based on Johnson & Bell's handling of two underlying actions, the Lewis action and the Zarndt action.
One of Johnson & Bell's alleged missteps was providing negligent advice to the underwriters that they had a duty to provide representation in the Lewis lawsuit. With respect to those fees, the underwriters contended that "it would not have undertaken its representation of the defendants in the underlying Lewis lawsuit but for defendants' advice." Id . at *5. The underwriters did not make an equivalent claim with respect to the Zarndt action.
A separate failure, however, was that Johnson & Bell negligently had failed to name a necessary party in both the Zarndt and Lewis actions. Consequently, they had to hire replacement counsel in those lawsuits and to incur unnecessary attorneys' fees to correct the errors. Relying on Sorenson and other Illinois cases, the district court held that Illinois law did not bar the underwriters' claims: "Defendants' omission of FCC as a defendant in the ... declaratory judgment actions allegedly necessitated correction of the pleadings at a fixed cost to plaintiff. At the time the fees were incurred, it was clear that the fees were directly attributable to counsel's neglect." Id . at *7 (citing Sorenson , 45 Ill.Dec. 714, 413 N.E.2d at 52 ). The court saw no analytical significance to the fact that the underwriters had incurred the fees in existing litigation, rather than incurred in a separate lawsuit. Moreover, the court made no distinction between fees incurred in the Lewis action, which would not have been undertaken absent Johnson & Bell's negligence, and those incurred in the Zarndt action, the defense of which the underwriters did not challenge.
Here, Messrs. Webb and Beversdorf do not seek damages from FINRA in the form of attorneys' fees expended in this action. Instead, they seek damages from FINRA that include the expenditure of attorneys' fees in the underlying arbitration. They claim that these damages are "the direct result" of FINRA's failure to create fair procedures and of FINRA's interference in the arbitral process.[1] Illinois law does not preclude a plaintiff from "recovering losses directly caused by the defendant's conduct simply because those losses happen to take the form of attorneys' fees." Sorenson , 45 Ill.Dec. 714, 413 N.E.2d at 52. Moreover, the court inquired, and plaintiffs' counsel represented on the record, that the fees paid to FINRA and to arbitral counsel exceeded $75,000.[2] See *864 Rising-Moore v. Red RoofInns, Inc. , 435 F.3d 813, 816 (7th Cir. 2006) (finding that plaintiff's counsel's settlement demand could support a finding that the amount in controversy had been satisfied); cf. Workman v. United Parcel Serv., Inc. , 234 F.3d 998, 1000 (7th Cir. 2000) (observing that a plaintiff's refusal to stipulate that his claim is less than $75,000 raises an inference that he believes his claim is worth more). Consequently, the district court properly determined that the amount in controversy was not in question.
As noted at the outset of this separate opinion, we have said, straightforwardly and firmly, that "[t]he legal-certainty test sets the bar high for excluding federal subject-matter jurisdiction, and for good reason: District courts should not get bogged down at the time of removal in evaluating claims on the merits to determine if jurisdiction exists." Carroll , 658 F.3d at 681. This rule, rooted in the long-standing jurisprudence of the Supreme Court, see St. Paul Mercury Indem. Co. , 303 U.S. at 289, 58 S.Ct. 586, is followed faithfully throughout the Country, see, e.g. , Colavito v. New York Organ Donor Network, Inc. , 438 F.3d 214, 221 (2d Cir. 2006). When the applicable state law definitively precludes recovery of the jurisdictional amount, we have not hesitated to say that the federal court is without jurisdiction. See, e.g. , Anthony v. Sec. Pac. Fin. Servs., Inc. , 75 F.3d 311, 317-18 (7th Cir. 1996). However, when state law is "unsettled," we will not engage in guesswork to resolve the issue of state law prematurely. Geschke v. Air Force Ass'n , 425 F.3d 337, 341 (7th Cir. 2005).[3]
Here, the majority opinion, quite admittedly, see Majority Opinion 859, engages in such guesswork. Frankly admitting that it cannot say with any certainty how Illinois courts would resolve the plaintiffs' substantive claims, it ignores the court's teaching in Geschke . Taking a guess on the content of state law, it denies the defendants their rightful federal forum. In doing so, it effectively chides the district court for having followed the established law of the circuit and tells future district courts to ignore Geschke and to follow its example today of becoming bogged down in reading "tea leaves" on the content of state law. It departs from the established practice of accepting jurisdiction and of confronting the content of state law by later employing other federal practice devices that are far better suited to addressing, sometimes with the help of the state court, the intractable problems inherent in the "Erie guess."[4] See, e.g. , Colavito , 438 F.3d at 231-35 (deciding the jurisdictional amount issue and then determining through motions for summary judgment, for dismissal for failure to state a claim, and by certification whether the plaintiff could state a viable cause of action).
Because I believe that the district court followed established practice, grounded in well-settled case law across the Nation, I respectfully dissent from the dismissal for want of subject matter jurisdiction.

R.1-1 at 7.

See R.35-2 at 3-4.

We note in passing, however, that when a claim for punitive damages comprises the vast bulk of the amount necessary to reach the jurisdictional threshold, we have proceeded with a heightened degree of caution. See Del Vecchio v. Conseco, Inc. , 230 F.3d 974, 978-79 (7th Cir. 2000) ; see also Packard v. Provident Nat'l Bank , 994 F.2d 1039, 1046 (3d Cir. 1993).

See generally Dolores K. Sloviter, A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism , 78 Va. L. Rev. 1671 (1992).