169 F.3d 469
 79 Fair Empl.Prac.Cas. (BNA) 478,
75 Empl. Prac. Dec. P 45,853
Margaret M. CARVER and Randall S. Carmean, Plaintiffs-Appellees,
v.
Anthony M. CONDIE, Sheriff of LaSalle County, Illinois, Defendant.
Appeal of: County of LaSalle
 No. 97-2731.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 6, 1998.
Decided Feb. 25, 1999.
 
 Steven N. Fritzshall, Fritzshall & Gleason, Chicago, IL; Andrew W. Levenfeld (argued), Levenfeld & Associates, Chicago, IL, for Plaintiffs-Appellees.
 Gary R. Garretson, Morris, IL, for Defendant.
 William C. Barasha (argued), Kurnik, Cipolla & Barasha, Arlington Heights, IL, for Appellant.
 Before FLAUM, ROVNER, and DIANE P. WOOD, Circuit Judges.
 DIANE P. WOOD, Circuit Judge.
 
 
 1
 This case presents a thorny question about the interaction between an Illinois sheriff and the county his department serves. In many ways, sheriffs in Illinois are independent political actors, but in one crucial way they are not. All funding for sheriffs' departments must come from appropriations by the county with which the department is associated. Here, Sheriff Anthony M. Condie of LaSalle County settled a lawsuit that had been brought against the county, the LaSalle County Sheriff's Department, and the sheriff himself, for the tidy sum of $500,000. In essence, the county is now trying to contest its own liability to pay this sum on the ground that it did not agree to the settlement. The district court ruled that the county had lost its status as a party to the underlying action and therefore it had to fight out its internecine battle with the sheriff in state court. We conclude that the district court acted too hastily in finding that the county could not contest its liability under the consent decree, and we therefore remand for further proceedings.
 
 
 2
 * Most of the relevant underlying facts pertain to the course of the proceedings below, rather than the original substantive claims. This suit began when plaintiffs Margaret M. Carver and Randall S. Carmean, former employees of the LaSalle County Sheriff's Department, sued the county, the sheriff's department, and the sheriff, claiming sexual harassment, sex discrimination, deprivations of equal protection, and retaliation, in violation of Title VII and 42 U.S.C. § 1983. In June 1994, LaSalle County moved to be dismissed as a defendant, and the court granted its motion. Neither then nor at any later time did the court grant a motion under Rule 54(b) that would have permitted the plaintiffs to take an appeal from this order. Furthermore, the plaintiffs have not taken a cross-appeal in this action. Some time thereafter, the plaintiffs filed an amended complaint with the same allegations, but naming only Sheriff Condie as the defendant. At that point, the county was more than happy to be rid of the case. Only later, when it looked as if the county might have to foot the bill, did it renew its interest in the litigation.
 
 
 3
 Pretrial preparations went forward under the amended complaint. As is common, the parties at the same time were engaged in settlement discussions. At one point, the plaintiffs considered and rejected an offer of $30,000. Time passed, and trial was set to begin on August 12, 1996. The court summoned a prospective jury panel, the parties appeared, and everything looked ready to go. Instead, however, the court gave the parties a short final break for settlement discussions, and they returned with the news that they had resolved the case. Under the tentative settlement, whose terms were then confidential, Sheriff Condie agreed to language under which $500,000 in compensatory damages would be assessed "against defendant, Anthony M. Condie, Sheriff of LaSalle County." The settlement said nothing about punitive damages, which the plaintiffs had requested in their amended complaint. At the parties' mutual request, on August 16, 1996, the court entered a consent decree terminating the litigation in accordance with the settlement. Before it did so, the parties informed it that the sheriff was entering the decree in his institutional capacity, and that they regarded the judgment as an obligation of the sheriff's department.
 
 
 4
 On August 30, 1996, the plaintiffs filed and served a third-party citation to discover assets on the county, to be used to satisfy the consent decree out of funds that had been appropriated for the sheriff's department. The county responded with a motion to quash the citation and a Rule 60(b) motion to set aside the consent decree. The district court denied the latter, finding that the county was not entitled to make such a motion because it was not a party to the litigation (and had not been since it won dismissal from the suit before the complaint was amended) and it had not filed a proper motion to intervene under Rule 24(e). The court also commented that it would have been disinclined to grant a motion to intervene, since the county had not demonstrated that the consent decree infringed on its rights or interests. "The decree places no legal obligation upon LaSalle County," wrote the court, and thus it had no reason to intervene in the action. Finally, the court noted that Fed.R.Civ.P. 69(a) permits a judgment creditor to obtain discovery from "any person," using the procedures provided by the law of the state where the district court sits. In Illinois, the pertinent rule is Ill. Sup.Ct. R. 277(a), which allows a party to commence a supplementary proceeding "with respect to a judgment which is subject to enforcement ... against the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor." Concluding that there was no evidence in the record indicating that the county had in its possession any of the sheriff's assets, the court quashed the citation.
 
 
 5
 This ruling prompted the county to file a motion to alter or amend under Rule 59(e). It argued that it had actually remained a party to the action because there had never been a Rule 54(b) order rendering final the judgment dismissing it. The district court denied that motion. It noted that more than 30 months had elapsed since the order dismissing the county, that the amended complaint had not re-named the county, that neither the plaintiffs nor the sheriff had treated the county like a party, and, "[m]ost importantly, LaSalle County did not act like a party and did not assert any interest in the case" after being dismissed. The county's decision to stay out of the suit meant, in the court's view, that it would have to litigate any questions about its responsibility for paying under the consent decree in state court.
 
 II
 
 6
 In our view, the question whether the county remained a formal party to the litigation is something of a red herring. The critical issue is whether it had a sufficient interest in the outcome of the Rule 277 supplementary proceeding to permit it to litigate its liability to satisfy the judgment before the district court. The county's party status is relevant to the latter question only because, if the county had been something like a silent partner of the sheriff's department all along, it would be indisputable that it had the right to participate in the Rule 277 proceeding, while if it was not a party, a somewhat different analysis applies.
 
 
 7
 No one disputes several key facts about the county's role in the case. It was named as a defendant in the original complaint; it filed a motion to have itself dismissed; and it succeeded in that motion. When the plaintiffs filed their amended complaint, the county was nowhere to be seen. At no time prior to entering final judgment, in the form of the consent decree, did the district court ever reconsider its order dismissing the county. The county certainly had no interest in its doing so and the plaintiffs had acquiesced in that ruling. Once the amended complaint was filed, however, it became the governing document in the case and any allegations and parties not brought forward fell by the wayside. See, e.g., Collins v. Kibort, 143 F.3d 331, 335 (7th Cir.1998); Wellness Community Nat'l v. Wellness House, 70 F.3d 46, 49 (7th Cir.1995). This does not mean that the plaintiffs--the parties aggrieved by the order of dismissal--could not have complained about the original order in the county's favor upon an appeal or cross-appeal. An appeal from a final judgment brings up all interlocutory orders entered in the case, and the court's order dismissing the county was one such ruling. But plaintiffs did not take a cross-appeal here, and the county is not claiming that the court erred in dismissing it from the action.
 
 
 8
 The county's argument that in a broader sense it remained a party throughout the proceedings, even up until now, relies on the fact that the district court did not enter an order under Rule 54(b) making its dismissal final for purposes of appellate review. Rule 54(b), however, does not affect the county's "party" status one way or the other. The only purpose of a Rule 54(b) order is to render "final" for purposes of appellate review a discrete part of a case that can and should stand on its own immediately. Once a final judgment disposing of all claims and all parties is entered, a Rule 54(b) order, entered either before or after the final judgment, has no role to play. The outer limit of the time for taking an appeal is measured from the date of the final judgment. In this case, the date on which the consent decree was entered, August 16, 1996, is the date when all claims against all parties were resolved.
 
 
 9
 The county cannot be suggesting that we still lack a final judgment because there was never a Rule 54(b) order. That would require dismissal of this entire appeal for lack of jurisdiction. But our jurisdiction is secure, because the only matters before us pertain to post-judgment rulings of the district court in connection with enforcement proceedings. Sometimes, to be true, vexing issues of appellate jurisdiction can arise in this context. Appellate courts do not want to be deluged with appeals from essentially interlocutory orders pertaining to discovery of assets and enforcement of judgments. But the district court's order quashing the citation directed at the county effectively ended the plaintiffs' effort to discover the assets that the sheriff's department could use to pay their judgment. Thus, the court's ruling constitutes a final decision for that post-judgment proceeding and is appealable under 28 U.S.C. § 1291. See Bogard v. Wright, 159 F.3d 1060, 1062 (7th Cir.1998) (noting that post-judgment proceedings are treated as free-standing lawsuits and that § 1291 applies when the final decision in such a proceeding is analogous to a conventional final judgment); Motorola, Inc. v. Computer Displays Int'l, Inc., 739 F.2d 1149, 1154 (7th Cir.1984) (noting that to be a final judgment under § 1291 a post-judgment order must completely dispose of all issues raised).
 
 
 10
 Just because no one appealed the dismissal of the county from the underlying action, however, does not mean that it had no right to participate before the court in the Rule 277 proceeding. To the contrary, a Rule 277 proceeding may be directed against either the judgment debtor (i.e., the sheriff's department or "institutional" sheriff) or "any third party the judgment creditor believes has property of or is indebted to the judgment debtor." We do not disagree with the district court insofar as it ruled that the question of the legal responsibility of the county for the debts of the sheriff's department is governed by state law. It is. But the district court had supplemental jurisdiction to consider that state law issue as part of its overall authority to enforce the judgment. See Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co., 68 F.3d 1016, 1020 (7th Cir.1995). This was not a separate suit on a judgment, for which an independent jurisdictional basis would have been necessary; it was the post-judgment stage of a suit properly founded on federal question jurisdiction.
 
 
 11
 Moreover, as the arguments presented in this court well illustrate, the question whether the county can be held financially responsible for the settlement the sheriff signed is a complex one. Under the Illinois Constitution, the sheriff is an independently elected constitutional officer who answers only to the electorate, not to the County Board of Commissioners. See Ill. Const., art. VII, § 4(c) ("Each county shall elect a sheriff...."); Thompson v. Duke, 882 F.2d 1180, 1187 (7th Cir.1989); Moy v. Cook County, 159 Ill.2d 519, 203 Ill.Dec. 776, 640 N.E.2d 926, 928-29 (1994). In addition, under the Local Government and Governmental Employees Tort Immunity Act:
 
 
 12
 A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article.... A local public entity may make payments to settle or compromise a claim or action which has been or might be filed or instituted against it when the governing body or person vested by law or ordinance with authority to make overall policy decisions for such entity considers it advisable to enter into such a settlement or compromise.
 
 
 13
 745 ILCS 10/9-102 (West 1998). Relying on the sheriff's constitutional independence and the Act, the plaintiffs argue that Sheriff Condie had authority to settle the official capacity claim against him and to make a binding commitment to pay money as a component of that settlement. The county responds that the sheriff is a creature of limited powers under state law and cannot stray beyond them. See generally 55 ILCS 5/3-6001 et seq. (detailing the powers and duties of sheriffs). These powers include the power to appoint and hire deputies, 55 ILCS 5/3-6008, to act as custodian of the courthouse and jail, 55 ILCS 5/3-6017, to protect the peace, 55 ILCS 5/3-6021, to act as the county's supervisor of safety, 55 ILCS 5/3-6035, and to make disbursements for authorized and budgeted expenditures, 55 ILCS 5/3-6018. Conspicuously missing from this list is the power to tax and to appropriate monies: those powers are reserved to the County Board of Commissioners. 55 ILCS 5/5-1024. Thus, the sheriff only has whatever funds the county chooses to give his office in any given year.
 
 
 14
 The plaintiffs recognize this, but they suggest that the county board does not micromanage the sheriff's use of his funds. If the sheriff enters into a commitment to pay $500,000, and the county gives him only $800,000 that year in his budget, the plaintiffs apparently believe he should just pare the rest of his operations down to the $300,000 level and make do. In the alternative, the plaintiffs also point out that Illinois law imposes a duty of indemnification on a county for certain acts of the sheriff or a deputy sheriff:
 
 
 15
 Indemnity of sheriff or deputy. If any injury to the person or property of another is caused by a sheriff or any deputy sheriff, while the sheriff or deputy is engaged in the performance of his or her duties as such ... [,] the county shall indemnify the sheriff or deputy ... for any judgment recovered against him or her as the result of that injury, except where the injury results from the willful misconduct of the sheriff or deputy, ... to the extent of not to exceed $500,000, including costs of action.... [The sheriff must comply with certain notice provisions and make a proper demand for indemnification.] The county which is or may be liable to indemnify the sheriff or deputy sheriff ... may intervene in the action ... and shall be permitted to appear and defend.
 
 
 16
 55 ILCS 5/5-1002. Although this statute reads as if it covers indemnification in suits against the sheriff in his individual capacity, we cannot say, at this juncture, if it is so limited. It is also not clear whether counties in Illinois may intervene in Rule 277 proceedings by virtue of the last sentence quoted above or, if they can, what bearing state practice should have when Rule 277 is being used in a federal court under the authority of Fed.R.Civ.P. 69(a).
 
 
 17
 It suffices for now to say that the county has raised serious questions about its duty to satisfy the consent decree the sheriff signed, and that it is entitled to litigate those questions before the district court. We further add that the county strongly suspects that the sheriff's settlement was collusive; the fact that the amount offered leapt from $30,000 to $500,000, and that the $500,000 number happens to be the ceiling in the indemnification statute, raises the county's eyebrows. Whether or not the county has standing to attack the underlying consent decree, or if it may only defend against its legal liability to pay, is a matter we leave for development on remand. The plaintiffs would not be without a remedy either if it turned out that the county was not legally required to stand behind the sheriff's generous promises; they could always return to court under Rule 60(b) and seek to withdraw the agreement and litigate their action. The district court would, as always, have considerable discretion in considering such a motion, and it is far too early for us to predict how the equities would fall.
 
 
 18
 We therefore REVERSE and REMAND for further proceedings in the district court.