Docket No. 91108–Agenda 26–November 2001.

MARGARET M. CARVER 
et al.
, Appellants, v. THE SHERIFF OF La SALLE COUNTY, Appellee.

Opinion filed February 6, 2003.

CHIEF JUSTICE McMORROW delivered the opinion of the court:

This case is before us on a question of Illinois law certified by the United States Court of Appeals for the Seventh Circuit. 145 Ill. 2d R. 20. The certified question is:

“Whether, and if so when, Illinois law requires counties to pay judgments entered against a sheriff’s office in an official capacity. If [the Supreme Court of Illinois] believes that the answer depends on whether the case was settled as opposed to litigated, we would welcome treatment of that distinction as well.”

For the reasons that follow, we hold that under Illinois law a sheriff, in his or her official capacity, has the authority to settle and compromise claims brought against the sheriff’s office. Because the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff’s office in an official capacity. We further hold that this conclusion is not affected by whether the case was settled or litigated.

BACKGROUND

On April 14, 1994, plaintiffs Margaret M. Carver and Randall S. Carmean, former employees of the La Salle County sheriff’s department, filed a complaint in the United States District Court for the Northern District of Illinois against La Salle County, the La Salle County sheriff’s department, and Anthony M. Condie, sheriff of La Salle County. The complaint alleged that the sheriff of La Salle County, Anthony Condie, engaged in sexual harassment, sex discrimination, deprivations of equal protection, and retaliation, in violation of title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000(e) (1994)) and section 1983 of title 42 (42 U.S.C. §1983 (1994)).

In June 1994, defendants La Salle County and the La Salle County sheriff’s department filed a motion to dismiss plaintiffs’ complaint. La Salle County contended that because the sheriff holds an independent office created by article VII, section 4(c), of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §4(c)), the county had no control over the conduct or policies of the sheriff’s office and, therefore, the county could not be held vicariously liable for the alleged discriminatory conduct of Condie. In addition, the La Salle County sheriff’s department argued that because it was created within the office of the La Salle County sheriff, and because its powers and duties are exercised under the direction of the sheriff, it did not have a separate legal existence apart from the sheriff of La Salle County and was, therefore, “not a sueable entity under Illinois law.”

On June 17, 1994, the district court granted the motion to dismiss filed by La Salle County and the La Salle County sheriff’s department. The district court, however, also granted plaintiffs leave to file an amended complaint. On August 2, 1994, plaintiffs filed an amended complaint, and named, as the sole defendant, “Anthony M. Condie, Sheriff,” in his official capacity. The allegations and relief requested in the amended complaint were the same as in plaintiffs’ original complaint.

The parties proceeded with discovery, and the case was set for trial. On July 17, 1996, the district court summoned a prospective jury panel, and the parties appeared for trial. The court gave the parties a final break within which to discuss a settlement. The parties thereafter informed the court that they had reached a tentative settlement of the case and requested that the court enter a consent decree to reflect their agreement. The consent decree stated that “Defendant Anthony M. Condie, Sheriff of LaSalle County has agreed to the entry of judgment against him” in the amount of $500,000 in compensatory damages for violations of title VII and section 1983. The parties informed the court that the sheriff was entering the decree in his official capacity and that the judgment was regarded as an obligation of the office of the sheriff of La Salle County. Pursuant to the provisions contained within the consent decree, the court clerk terminated the case, with the exception of issues arising out of the enforcement of the decree.

On August 30, 1996, the plaintiffs filed with the district court, and served upon La Salle County, a third-party citation to discover assets to determine whether the county was holding assets for, or on behalf of, the La Salle County sheriff.
(footnote: 1) In response, La Salle County provided plaintiffs with the sheriff’s budget and a list of all funds appropriated to the office of the La Salle County sheriff by the county board. Plaintiffs thereafter determined that La Salle County held funds duly appropriated and authorized by law for the use and benefit of the La Salle County sheriff and that these funds were available for the payment of the judgment. On September 6, 1996, plaintiffs filed a motion with the district court requesting that La Salle County turn over to plaintiffs all funds appropriated to the office of the La Salle County sheriff through the end of the budget year of 1996, and that the court impose a judicial lien on all assets held by La Salle County that belonged to the office of the La Salle County sheriff. On September 27, 1996, over two years after it requested that it be dismissed from this case, La Salle County attempted to intervene in this matter by filing a motion to quash the citation and a motion to set aside the consent decree as void. La Salle County argued that because it was not a party to the consent decree, it was not bound by its terms. The county further argued that, in any event, the consent decree was void because Sheriff Condie possessed no authority to enter into the decree and to determine how county monies would be expended. The county concluded by alleging that “the consent decree was but a ploy between the plaintiffs and Sheriff Anthony M. Condie to place the entire burden of paying the judgment on the County of La Salle, a non-party.”

On December 11, 1996, the district court entered an opinion and order denying La Salle County’s motion to declare the consent decree void. The court noted that La Salle County filed the motion to set aside the consent decree as an intervenor, yet the county neither presented the court with the proper motion to intervene nor requested leave of court to file an intervention motion. Accordingly, because La Salle County was not a party to the action, the court determined that it lacked jurisdiction to entertain the motion. Nevertheless, the court commented that it would have been disinclined to allow La Salle County to intervene, as the county did not show that the consent decree placed a legal obligation upon the county or affected its rights and interests. The district court, however, did quash the plaintiffs’ citation to discover assets. The court noted that, in their pleadings, plaintiffs had failed to address La Salle County’s motion to quash, and, therefore, the county’s argument stood unrefuted. The court agreed with the county that there was no evidence in the record that the county possessed any of the sheriff’s assets that could apply to the judgment.

Thereafter, La Salle County, arguing that it had always remained a party to the underlying litigation, filed in the district court a motion requesting the court to “alter or amend” its judgment order of December 9, 1996, or in the alternative, for leave to intervene, 
instanter
. On June 10, 1997, the court denied both motions. The court noted that La Salle County voluntarily absented itself from this case, and “when La Salle County chose not to protect its interests thereafter, it found itself in an oubliette from which its untimely motion offers no escape.” The district court concluded that a grant of intervention at this late stage of litigation would prejudice the parties.

La Salle County appealed to the United States Court of Appeals for the Seventh Circuit. In 
Carver v. Condie
, 169 F.3d 469 (7th Cir. 1999) (
Carver I
), the Seventh Circuit reversed and remanded this matter for further proceedings before the district court. The Seventh Circuit concluded that “the district court acted too hastily in finding that the county could not contest its liability under the consent decree” (
Carver I
, 169 F.3d at 470) and that La Salle County “has raised serious questions about its duty to satisfy the consent decree the sheriff signed” (
Carver I
, 169 F.3d at 473). Accordingly, the Seventh Circuit remanded this cause for the district court to determine “[w]hether or not the county has standing to attack the underlying consent decree, or if it may only defend against its legal liability to pay.” 
Carver I
, 169 F.3d at 474.

On remand, plaintiffs filed in the district court a motion to direct La Salle County to pay the consent decree. In response, the county again filed a motion to vacate the consent decree or, in the alternative, for declaratory relief. On February 10, 2000, the district court denied the motions of both plaintiffs and La Salle County, finding that La Salle County is not liable to plaintiffs for paying the consent decree. The district court, however, also recommended that the question of who pays the consent decree judgment be certified to this court.

Plaintiffs appealed to the Seventh Circuit. Because Condie is no longer the sheriff of La Salle County, and because the consent decree was entered against Condie in his official capacity, the court recaptioned the case as 
Carver v. Sheriff of La Salle County
, 243 F.3d 379 (7th Cir. 2001) (
Carver
 II). The court noted that the instant cause “is just one instance of a recurring question: Who pays official-capacity judgments in Illinois when the wrongdoer is an independently-elected officer?” 
Carver II
, 243 F.3d at 381. The Seventh Circuit explained the dilemma posed by cases such as that at bar:

“Sheriffs, treasurers, clerks of court, and several other officers within Illinois counties are elected directly by the people and establish their own policies, but they lack authority to levy taxes or establish their own budgets. This leads the independently-elected officers to contend that the counties must pay; but the counties, which are unable to control the conduct of the officers, insist that they cannot be held liable because an official-capacity judgment runs against the 
office
 and not against an ‘employee’ of the county. The law of Illinois does not provide a clean solution to this conflict, in which each insists that the other must pay.” (Emphasis in original.) 
Carver II
, 243 F.3d at 381.

In attempting to resolve the question of who pays official-capacity judgments in Illinois when the wrongdoer is an independently elected officer, the Seventh Circuit looked to section 9–102 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/9–102 (West 2000)) and concluded that because the cause at bar involves an official-capacity suit against the sheriff’s 
office
, “the sheriff’s office itself seems to be [a] ‘local public entity’ ” within the meaning of this statutory section, which empowers a local public entity to settle and pay tort claims for which the entity is liable. 
Carver II
, 243 F.3d at 383. The Seventh Circuit, however, observed that although it appears that the sheriff possesses the statutory authority to settle the claim and to pay the judgment, the statutory scheme does not make funds available to the sheriff to do so. The Seventh Circuit questioned the argument advanced by La Salle County that when an independently elected county officer settles official-capacity litigation, that officer may only 
recommend
 to the county board that funds be appropriated to satisfy the judgment. The court observed that under such a system, “the plaintiffs’ entitlement would be, not immediate payment, but an order compelling the incumbent sheriff to get a move on finding the necessary funds (or, at plaintiffs’ option, to an order vacating the settlement and placing the case back on the docket for decision on the merits).” 
Carver II
, 243 F.3d at 385. The Seventh Circuit then took La Salle County’s argument one step further:

“Suppose that an order requiring a sheriff to seek funding from a county is the only possible enforcement tool after a sheriff settles official-capacity litigation. That has an unsettling implication for cases that are not settled, for it implies that no money judgment against a sheriff’s office is enforceable in Illinois. The alternative to settlement is a decision by the court, and LaSalle County’s argument that it has plenary power not to appropriate funds to pay judgments implies that it could refuse to pay–and deny plaintiffs any means of collecting–even if this case had been litigated to the hilt rather than settled. That would put Illinois out of compliance with federal law ***. A state may not evade compliance by modeling its internal organization after a huckster’s shell game, so that no matter which entity the plaintiff sues, the state (or its subdivisions) always may reply that someone else is responsible–and that power has been divided in such a fashion that the responsible person can’t pay, and the entity that can pay isn’t responsible for doing so. We are confident that the State of Illinois would not do such a thing, and that its statutes and other institutional arrangements leave some means of producing an enforceable judgment. But LaSalle County says otherwise, that it is never obliged to pay an official-capacity judgment growing out of a sheriff’s wrongdoing, and our tour through state law has not produced a clear answer to the County’s argument.” (Emphasis omitted.) 
Carver II
, 243 F.3d at 385-86.

Perceiving that there was a need for this court to authoritatively decide the issue of who is liable for payment of a judgment entered against a sheriff’s office in an official capacity, the Seventh Circuit certified this question pursuant to Supreme Court Rule 20 (145 Ill. 2d R. 20).
(footnote: 2) We agreed to answer the question certified to us by the Seventh Circuit. We granted leave to the County of Du Page and the County of Cook to file an 
amicus curiae
 brief in support of La Salle County.

ANALYSIS

We are asked by the United States Court of Appeals for the Seventh Circuit to answer the following question: “Whether, and if so when, Illinois law requires counties to pay judgments entered against a sheriff’s office in an official capacity. If [the Supreme Court of Illinois] believes that the answer depends on whether the case was settled as opposed to litigated, we would welcome treatment of that distinction as well.” The resolution of this question involves the interpretation of statutes found within the Tort Immunity Act (745 ILCS 10/1–101 
et seq.
 (West 2000)) and the Counties Code (55 ILCS 5/1–1001 
et seq. 
(West 2000)). Because the construction of a statute is a question of law, our review is 
de novo
 (
Michigan Avenue National Bank
 
v. County of Cook
, 191 Ill. 2d 493, 503 (2000)), and our inquiry is conducted within a familiar analytical framework.

It is well settled that the primary objective of this court in construing the meaning of a statute is to ascertain and give effect to the intention of the legislature. 
Harinek v. 161 North Clark Street Ltd. Partnership
, 181 Ill. 2d 335, 340 (1998); 
Boaden v. Department of Law Enforcement
, 171 Ill. 2d 230, 237 (1996). All other rules of statutory construction are subordinate to this cardinal principle. 
Sylvester v. Industrial Comm’n
, 197 Ill. 2d 225, 232 (2001); 
Henrich v. Libertyville High School
, 186 Ill. 2d 381, 387 (1998). We determine legislative intent by examining the language of the statute, which is “the most reliable indicator of the legislature’s objectives in enacting a particular law.” 
Michigan Avenue National Bank
, 191 Ill. 2d at 504; see also 
Yang v. City of Chicago
, 195 Ill. 2d 96, 103 (2001); 
Nottage v. Jeka
, 172 Ill. 2d 386, 392 (1996). The statutory language must be given its plain, ordinary and popularly understood meaning (
In re Detention of Lieberman
, 201 Ill. 2d 300, 308 (2002); 
Bubb v. Springfield School District 186
, 167 Ill. 2d 372, 381 (1995)), and we are to afford the statutory language the fullest, rather than the narrowest, possible meaning to which it is susceptible (
Lake County Board of Review v. Property Tax Appeal Board
, 119 Ill. 2d 419, 423 (1988)). This court will not depart from the plain language of a statute by reading into it exceptions, limitations or conditions that conflict with the express legislative intent. 
Petersen v. Wallach
, 198 Ill. 2d 439, 446 (2002); 
Yang
, 195 Ill. 2d at 103; 
Kraft, Inc. v. Edgar
, 138 Ill. 2d 178, 189 (1990).

Because all provisions of a statutory enactment are viewed as a whole (
Michigan Avenue National Bank
, 191 Ill. 2d at 504; 
Bubb
, 167 Ill. 2d at 382), words and phrases should not be construed in isolation, but must be interpreted in light of other relevant portions of the statute. 
Sylvester
, 197 Ill. 2d at 232; 
Michigan Avenue National Bank
, 191 Ill. 2d at 504. In construing a statute, we presume that the General Assembly, in its enactment of legislation, did not intend absurdity, inconvenience or injustice. 
Burger v. Lutheran General Hospital
, 198 Ill. 2d 21, 40 (2001); 
Michigan Avenue National Bank
, 191 Ill. 2d at 504.

At the outset, we note that section 5–1002 of the Counties Code (55 ILCS 5/5–1002 (West 2000)) provides that a county must indemnify a sheriff or deputy for “any judgment recovered against him or her as the result of [an injury to the person or property of another caused by the sheriff or deputy in the performance of his or her duties], except where the injury results from the wilful misconduct of the sheriff or deputy,” up to $500,000. Although it may initially appear that this statute is applicable to the instant cause, we agree with the Seventh Circuit in 
Carver II
 that a close examination of section 5–1002 reveals that, under the specific facts presented at bar, section 5–1002 “does not provide a silver bullet here.” 
Carver II
, 243 F.3d at 384.

First, as the Seventh Circuit correctly noted, the plain language of the indemnity provisions contained within section 5–1002 establishes that indemnification is available only where a judgment is entered against a sheriff or deputy in a 
personal
 capacity: “the county shall indemnify 
the sheriff or deputy
, as the case may be, for any judgment recovered 
against him or her
.” (Emphases added.) 55 ILCS 5/5–1002 (West 2000). The plain language of section 5–1002 does not indicate that it applies to official-capacity actions in which the 
office
 of the sheriff is held responsible. Accordingly, where, as here, a judgment is entered against a sheriff in his official capacity and is regarded as an obligation of the sheriff’s office, section 5–1002 does not apply.

Moreover, even if we were to assume that section 5–1002 indemnifies sheriffs or deputies for judgments entered in an official capacity, a further difficulty arises. Section 5–1002 explicitly excludes from indemnification any judgment entered as a result of “wilful misconduct.” 55 ILCS 5/5–1002 (West 2000). As stated, in the matter at bar plaintiffs filed federal claims pursuant to both section 1983 and Title VII of the Civil Rights Act of 1964. A Title VII claim is, by necessity, an official-capacity action because only  an “employer” may be held liable for discrimination which violates Title VII’s provisions. 42 U.S.C. §2000e(b) (1994); 
Williams v. Banning
, 72 F.3d 552, 554 (7th Cir. 1995). Accordingly, plaintiffs at bar filed their Title VII lawsuit as an official-capacity action in which the sheriff’s 
office
 (the “employer” of Condie for purposes of Title VII) was the defendant. If section 5–1002 were construed to apply to an official-capacity action such as that at bar, the section’s explicit exclusion of “wilful misconduct” from indemnification would lead to an absurd result: the county government could insulate itself from liability imposed under a federal statute, and thereby preclude a meritorious plaintiff from recovering on the claim. As the Seventh Circuit correctly observed in 
Carver II
, such a result would “put Illinois out of compliance with federal law *** [which] holds that Title VII is binding on the states, and may be enforced in federal court, by virtue of national power under §5 of the fourteenth amendment.” 
Carver II
, 243 F.3d at 385-86. Thus, we agree with the Seventh Circuit that section 5–1002 “is a poor match” for Title VII claims, such as those at bar, as “all violations of Title VII require discriminatory intent, a form of wilful misconduct.” 
Carver II
, 243 F.3d at 384. In light of the limitations imposed by our General Assembly upon the indemnification provisions contained within section 5–1002, it is not surprising that the parties in the matter before us do not strenuously argue the application of section 5–1002 to the instant cause.

Rather, the dispute between the parties at bar revolves primarily around their differing interpretations of section 9–102 of the Tort Immunity Act (745 ILCS 10/9–102 (West 2000)). This statutory provision falls under article IX of the Tort Immunity Act, which is entitled “Payment of Claims and Judgment.” 745 ILCS 10/9–101 
et seq.
 (West 2000). Section 9–102 sets forth the parameters within which a local public entity may compromise and settle claims filed against it, and empowers that entity to pay any tort judgment or settlement for compensatory damages for which the entity, or an employee of the entity acting within the scope of employment, is liable. Section 9–102 provides:

“A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article. *** A local public entity may make payments to settle or compromise a claim or action which has been or might be filed or instituted against it when the governing body or person vested by law or ordinance with authority to make over-all policy decisions for such entity considers it advisable to enter into such a settlement or compromise.” 745 ILCS 10/9–102 (West 2000).

In its submission to this court, La Salle County contends that, under the plain language of section 9–102, only a county board may settle or compromise a claim and appropriate funds for payment of a judgment. La Salle County asserts that the phrase “local public entity” contained in section 9–102 refers to the county. Accordingly, La Salle County argues, by the very terms of section 9–102 only the county board is “vested by law or ordinance to make over-all policy decisions” for the county, only the county board can enter into a settlement or compromise of claims, and, therefore, only the county board is empowered to pay any tort judgment or settlement for which it or an employee of the county acting within the scope of employment is liable. Under the facts presented at bar, La Salle County contends that Sheriff Condie did not possess the authority to enter into the settlement agreement and consent decree absent the express authorization of the La Salle County board. Accordingly, under the county’s interpretation of section 9–102, it is not liable for the judgment.

Plaintiffs advance a different interpretation of section 9–102. Plaintiffs contend that Sheriff Condie, in his official capacity as the sheriff of La Salle County, possessed the statutory authority, pursuant to section 9–102, to enter into the settlement agreement and consent decree. Plaintiffs, echoing the position taken by the Seventh Circuit in 
Carver II
, contend that a county sheriff is a “local public entity.” Therefore, plaintiffs assert, the sheriff, as the “person vested by law *** with authority to make over-all policy decisions” for the office of county sheriff, is expressly vested by section 9–102 with the power to enter into a settlement of claims filed against that office and to authorize payment to satisfy such claims. We agree with plaintiffs’ interpretation of section 9–102.

We begin our analysis with a review of article I of the Tort Immunity Act (745 ILCS 10/1–201 
et seq.
 (West 2000)), which contains definitions of several words and terms used throughout the Act. The term “local public entity” is defined in section 1–206:

“ ‘Local public entity’ includes a county, township, municipality, municipal corporation, school district, school board, educational service region, regional board of school trustees, community college district, community college board, forest preserve district, park district, fire protection district, sanitary district, museum district, emergency telephone system board, and 
all other local governmental bodies
. ‘Local public entity’ also includes library systems and any other intergovernmental agency or similar entity formed pursuant to the Constitution of the State of Illinois or the Intergovernmental Cooperation Act as well as any not-for-profit corporation organized for the purpose of conducting public business. It does not include the State or any office, officer, department, division, bureau, board, commission, university, or similar agency of the State.” (Emphasis added.) 745 ILCS 10/1–206 (West 2000).

We have previously observed that the term “local public entity,” as used in the Tort Immunity Act, is “broadly defined.” 
Boyles v. Greater Peoria Mass Transit District
, 113 Ill. 2d 545, 553 (1986). Although the office of sheriff is not specifically listed as a “local public entity” in section 1–206, “Illinois courts have long recognized that various public entities, although not expressly identified in the statute, are within the definition of ‘local public entity.’ ” 
Luciano v. Waubonsee Community College
, 245 Ill. App. 3d 1077, 1083 (1993) (collecting cases). For the reasons that follow, we conclude that because a county sheriff falls within the term “other local governmental bodies” contained in section 1–206, the sheriff is therefore a “local public entity” for purposes of the Tort Immunity Act.

The office of sheriff is created by article VII, section 4, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. VII, §4(c)). The parties at bar do not dispute that, under Illinois law, a sheriff is an independently elected county officer and is not an employee of the county in which the sheriff serves. Ill. Const. 1970, art. VII, §4(c); 
Moy v. County of Cook
, 159 Ill. 2d 519 (1994); see also 
Franklin v. Zaruba
, 150 F.3d 682, 686 n.4 (7th Cir. 1998) (recognizing that while “sheriffs are agents of the county, rather than the state *** the sheriff is a particular kind of county agent–
i.e.
, an officer rather than an employee”). Accordingly, sheriffs answer to the electorate of the county from which they are elected, and not to the county board. See 
Ryan v. County of DuPage
, 45 F.3d 1090, 1092 (7th Cir. 1995); 
Thompson v. Duke
, 882 F.2d 1180, 1187 (7th Cir. 1989). Our constitution sets the sheriff’s term of elected office for four years (Ill. Const. 1970, art. VII, §4(c)), and the duties of the sheriff are continuous, without regard to the particular person who holds the office. 
Moy
, 159 Ill. 2d at 530. Our constitution further provides that a sheriff “shall have those duties, powers and functions provided by law and those provided by county ordinance,” as well as “the duties, powers or functions derived from common law or historical precedent unless altered by law or county ordinance.” Ill. Const. 1970, art. VII, §4(d).

Several sections of the Counties Code set forth the powers and the duties of the sheriff. See generally 55 ILCS 5/3–6001 
et seq
. (West 2000). For example, the sheriff has the authority to appoint and hire deputies (55 ILCS 5/3–6008 (West 2000)) and to act as the custodian of the county courthouse and the jail (55 ILCS 5/3–6017 (West 2000); see also 
Moy
, 159 Ill. 2d at 526 (discussing the specific duties imposed upon the sheriff by law with respect to the operation of the county jail)). The sheriff has the statutory duty to protect the peace within his or her county and, to this end, is authorized to “prevent crime and maintain the safety and order of the citizens of that county; and may arrest offenders on view, and cause them to be brought before the proper court for trial or examination.” 55 ILCS 5/3–6021 (West 2000). The sheriff is also vested with the authority to act as the county’s supervisor of safety (55 ILCS 5/3–6035 (West 2000)), with the power to “enforce all the laws of this State and, within the municipalities *** relating to the regulation of motor vehicle traffic and the promotion of safety on public highways.” 55 ILCS 5/3–6036 (West 2000).

The sheriff’s office is financed by public funds appropriated to that office by the county. For example, section 4–6003 of the Counties Code provides that in counties of less than 2 million the county board “shall fix the compensation of sheriffs, with the amount of their necessary clerk hire, stationery, fuel and other expenses.” 55 ILCS 5/4–6003 (West 2000). The county board is also obligated by statute to “provide proper rooms and offices for the accommodation” of the sheriff, as well as “reasonable and necessary expenses for the use of the *** sheriff.” 55 ILCS 5/5–1106 (West 2000). Although the sheriff is statutorily authorized to collect certain fees for services (55 ILCS 5/4–5001 (West 2000)), the sheriff is required to transfer these fees to the county treasurer (55 ILCS 5/3–13001 (West 2000)), and may not use them for compensation or payment of the expenses of the sheriff’s office. Ill. Const. 1970, art. VII, §9(a).

La Salle County observes that absent from the statutory powers vested in the sheriff is the power to tax and to appropriate monies. The county asserts that the inability of the county sheriff to levy taxes is fatal to the argument that the sheriff is a “local public entity” within the meaning of the Tort Immunity Act. We disagree. The Tort Immunity Act contains no requirement that, in order for a governmental unit to be classified as a “local public entity,” it must possess the power to tax. See 
McQueen v. Shelby County
, 730 F. Supp. 1449, 1454 (C.D. Ill. 1990). Indeed, if the General Assembly intended to restrict the definition of a “local public entity” to only those entities authorized to levy taxes, it could have defined a “local public entity” as an entity possessing the authority to tax. No such restriction appears in section 1–206. As stated, this court will not depart from a statute’s plain language by reading into it exceptions, limitations or conditions the legislature did not express. 
Petersen
, 198 Ill. 2d at 446;
 Yang
, 195 Ill. 2d at 103.

 In sum, a county sheriff is an independently elected county official, who performs functions that are essential to the operation of government, and whose office is funded by public funds. In light of these factors, we conclude that the county sheriff is a “local governmental body” as that term is used in section 1–206 of the Tort Immunity Act. Accordingly, the sheriff is a “local public entity” within the meaning of the Act.

Having found that the office of sheriff is a “local public entity,” we return to an examination of section 9–102 of the Tort Immunity Act, the statutory provision which is at the crux of the dispute between the parties. In the matter at bar, the sole defendant named in the action filed by plaintiffs was Sheriff Condie in his official capacity as the sheriff of La Salle County. Thus, the entity sued by plaintiffs was the office of the sheriff of La Salle County, and, accordingly, it is this local public entity which would be liable for any judgment on plaintiffs’ claims. As stated, section 9–102 provides that a local public entity may make payments to settle a claim filed against that public entity when the “person vested by law or ordinance with authority to make over-all policy decisions for 
such entity
 considers it advisable to enter into such a settlement or compromise.” (Emphasis added.) 745 ILCS 10/9–102 (West 2000). We conclude that this statutory provision gives the power to settle an action to the person who makes overall policy decisions for the local public entity 
which
 
is being sued
. Under the facts presented, this person is the county sheriff. In addition, section 9–102 empowers and directs a local public entity to pay “any tort judgment 
or
 settlement for compensatory damages for which 
it ***
 is liable.” (Emphases added.) 745 ILCS 10/9–102 (West 2000). Reading this portion of section 9–102 in the factual context of the matter at bar, we conclude that this provision authorizes the sheriff (as the local public entity) to pay any judgment or settlement for compensatory damages for which the office of the sheriff is liable.

Accordingly, pursuant to section 9–102 of the Tort Immunity Act, a county sheriff, in his or her official capacity, is vested by the General Assembly with the authority to settle litigation filed against the sheriff’s office and to direct the office to pay that settlement. However, the dilemma noted by the Seventh Circuit in its opinion in 
Carver II
 remains: although the sheriff has authority to settle claims filed against the sheriff’s office pursuant to section 9–102, the statute is silent with respect to the specific mechanism for funding the judgment.

As stated, although the office of sheriff is constitutionally created (Ill. Const. 1970, art. VII, §4(c)), and the sheriff is an independently elected county officer, the county sheriff lacks the authority to levy taxes or establish a budget. Instead, the General Assembly has determined that the sheriff’s office is to be financed by public funds appropriated to it by the county board. See 55 ILCS 5/4–6003 (West 2000); 55 ILCS 5/5–1106 (West 2000). We conclude that, under this statutory scheme, the county is obligated to provide funds to the county sheriff to pay official capacity judgments entered against the sheriff’s office.

As stated, in construing the meaning of statutes, the primary objective of this court is to ascertain and give effect to the legislature’s intent. 
Michigan Avenue National Bank
, 191 Ill. 2d at 503-04. Our holding today effectuates the intent of the General Assembly, as evinced in section 9–102 of the Tort Immunity Act, to authorize a county sheriff to settle official-capacity claims against his or her office. Indeed, a contrary result would thwart the intent of the legislature in vesting settlement authority in the sheriff pursuant to section 9–102: the sheriff would have the authority to settle a claim, but would have no means to satisfy the resulting judgment. A settling meritorious plaintiff, therefore, would be left with a completely hollow victory. Indeed, in the words of the Seventh Circuit in 
Carver II
, such a result would resemble a “huckster’s shell game, so that no matter which entity the plaintiff sues, the state (or its subdivisions) always may reply that someone else is responsible–and that power has been divided in such a fashion that the responsible person can’t pay, and the entity that can pay isn’t responsible for doing so.” 
Carver II
, 243 F.3d at 386. We are additionally mindful that such a result could raise the possibility of collusion between independently elected officials and counties to frustrate meritorious actions brought by plaintiffs and to prevent them from ever having enforceable judgments. In construing statutes, we presume that the General Assembly, in enacting the legislation, did not intend absurdity or injustice. 
Burger
, 198 Ill. 2d at 40; 
Michigan Avenue National Bank
, 191 Ill. 2d at 504. Certainly, the General Assembly could not have intended such an absurd and unjust result.

In its written and oral submissions to this court, La Salle County apparently concedes that if the matter before us had been litigated to a verdict and judgment in the district court, the county would be potentially liable for any judgment entered against the sheriff in his official capacity, even if the sheriff failed to present any type of defense against the charges. La Salle County vigorously argues, however, that there is a palpable distinction between a judgment entered after trial and a judgment entered pursuant to a settlement agreement. According to the county, settlements carry the risk of collusion between the plaintiffs and independently elected county officials. Therefore, the county steadfastly maintains that where the sheriff settles an official-capacity claim, the settlement must be approved by the county. Absent such approval, the county contends that it is never obligated to pay such a settlement. We reject the county’s assertions.

The plain language of section 9–102 clearly expresses the legislature’s intent that this statutory provision is to apply equally to judgments 
or
 settlements. That section provides that a local public entity is vested with authority to “
settle or compromise
 a claim” where that entity determines that it is advisable to “enter into such a 
settlement or compromise
” and, accordingly, empowers the entity to pay “any tort judgment 
or settlement.
” (Emphases added.) 745 ILCS 10/9–102 (West 2000). Thus, contrary to the argument advanced by La Salle County, the legislature did not include any language in section 9–102 restricting that statute’s application to judgments entered after trial, or requiring that the county board approve a settlement made by the county sheriff with respect to claims against his or her office. To treat a settlement differently than a judgment rendered after trial would be to render the “settlement and compromise” provisions of section 9–102 meaningless. As stated, in construing a statute, we will not depart from the statute’s plain language by reading into it exceptions, limitations or conditions that conflict with the express legislative intent. 
Yang
, 195 Ill. 2d at 103; 
Kraft
, 138 Ill. 2d at 189. The plain language of section 9–102, which places settlements on an equal footing with judgments entered after trial, is in accord with Illinois public policy, which favors the settlement of claims. 
Rakowski v. Lucente
, 104 Ill. 2d 317, 325 (1984); see also 
Security Pacific Financial Services v. Jefferson
, 259 Ill. App. 3d 914, 919 (1994) (“there exists a strong policy in favor of settlement and the resulting avoidance of costly and time-consuming litigation”). We further note that the county’s argument may also lead to absurd results. Because section 9–102 specifically allows for settlements, it would be absurd to read this provision as imposing the duty upon a defendant to go to trial on a hopeless case in an effort to trigger 9–102’s provisions. As stated, in construing a statute, we presume that the General Assembly did not intend an absurd result. 
Burger
, 198 Ill. 2d at 40; 
Michigan Avenue National Bank
, 191 Ill. 2d at 504.

Although the plain language of section 9–102 belies the county’s assertion that settlements are to be treated differently than judgments which are entered after trial, we briefly address La Salle County’s argument that settlements are suspect because there is a risk of collusion between the settling parties. As an example, La Salle County points to the consent decree entered in the case at bar, and alleges that plaintiffs and Sheriff Condie entered into the consent decree as a “ploy” to obtain money from La Salle County. Whatever merit La Salle County’s argument may have, we determine that this argument is not germane to the factual context at bar. The record reflects that La Salle County requested to be dismissed from these proceedings at the outset of the case, thereby indicating that it did not want to be involved in this matter. Indeed, by having itself dismissed from the case, the county was unaware of the options facing the sheriff on the eve of trial, including whether the agreement to a settlement offer would be advantageous in light of the evidence which was to be presented by plaintiffs at trial. We further note that the county did not request to intervene in the proceedings upon the entry of the consent decree. Indeed, it was only after plaintiffs instituted collection proceedings that the county requested to intervene in an attempt to overturn the decree. By voluntarily absenting itself from the proceedings, the county failed to protect its own interests and those of its taxpaying constituents from the obligations imposed by section 9–102. We note that we express no opinion with respect to the validity of a settlement agreement stemming from a lawsuit of which a county had no notice.

As its final argument, La Salle County asserts that the matter at bar is factually analogous to the situation present in our decision in 
Pucinski v. County of Cook
, 192 Ill. 2d 540 (2000). In 
Pucinski
, the clerk of the circuit court of Cook County brought an original action for 
mandamus
 in this court to compel Cook County and its treasurer to pay for a mainframe computer and software she had purchased for the circuit clerk’s office. The purchase, however, was not made in accordance with the provisions of the Counties Code and Cook County ordinances. Specifically, the contract signed by Pucinski did not have the prior approval of the Cook County board of commissioners and was not signed by the president of the board, the county purchasing agent, and the comptroller (55 ILCS 5/5–36001 (West 1998); Cook County Ordinances §10–17) and it was not the subject of competitive bidding (55 ILCS 5/5–36006 (West 1998); Cook County Ordinances §10–18). In her 
mandamus
 petition, Pucinski stated that she had requested approval for the purchase from the Cook County board, but that the president of the board declined to place her request on the board’s agenda. Pucinski thereafter entered into the contract herself in her official capacity as the circuit court clerk, on the grounds that the purchase was necessary for her office to perform its statutory and constitutional obligations, and that she had the ultimate authority with respect to how her office should be run. Subsequently, the Cook County board refused to pay the contract because it had not been authorized or subject to competitive bidding.

This court denied Pucinski’s 
mandamus
 petition. We observed that “[b]ecause operations of the circuit clerks’ offices are paid for by the counties, any payments made from the county treasuries on behalf of the clerks’ offices must comport with the requirements of the Counties Code *** [and] the applicable Cook County ordinances.” 
Pucinski
, 192 Ill. 2d at 545. We held that Pucinski did not comply with the applicable statutes, which expressly required that the purchase contract was to be submitted to the county board for prior approval and that the purchase be the subject of competitive bidding. 
Pucinski
, 192 Ill. 2d at 545-46.

In its submission to this court, La Salle County contends that “[j]ust as the Clerk of the Circuit Court of Cook County could not compel the county board to pay for new office equipment which she purchased without following statutory procedures and without approval from the Cook County Board of Commissioners, Sheriff Condie, in this case, had no power (no statutory grant of settlement authority) to enter into a settlement agreement and consent decree which would require LaSalle County to pay the sum of $500,000.” We disagree. 
Pucinski 
is factually distinguishable from the matter at bar and is therefore inapposite. Our decision in 
Pucinski 
was animated by the fact that in purchasing the computer equipment, Pucinski failed to comply with explicit requirements contained in statutory provisions and county ordinances governing purchases, including the preapproval of purchasing contracts by the county board. In contrast, Sheriff Condie comported with the statutory provisions contained in section 9–102 governing the settlement of official-capacity claims. Unlike in 
Pucinski
, no statutory provisions were transgressed in the matter at bar.

As a final matter, we note that the 
amicus curiae
 brief filed by Du Page and Cook Counties raises two additional issues: (1) the propriety of Sheriff Condie’s retention of private counsel to defend against plaintiffs’ action; and (2) whether a federal section 1983 claim is cognizable against a county sheriff. Both of these issues are beyond the scope of the question certified to this court by the Seventh Circuit. “This court is not a court of review for federal court decisions. Therefore, we are restricted to the question certified to us.” 
Yang
, 195 Ill. 2d at 102. Accordingly, we decline to address the arguments of 
amici
.

CONCLUSION

For the foregoing reasons, we answer the question certified to us by the United States Court of Appeals for the Seventh Circuit as follows: we hold that under Illinois law a sheriff, in his or her official capacity, has the authority to settle and compromise claims brought against the sheriff’s office. Because the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff’s office in an official capacity. We further hold that this conclusion is not affected by whether the case was settled or litigated.

Certified question answered.

JUSTICE RARICK took no part in the consideration or decision of this case.

JUSTICE KILBRIDE, dissenting:

I respectfully dissent. Section 5–1002 of the Illinois Counties Code (Code) (55 ILCS 5/5–1002 (West 2000)) requires counties to indemnify sheriffs for 
any
 personal injury or property damage judgment within specific limits and subject to certain conditions. The majority holds that this provision is inapplicable to the case at hand because it only applies to individual-capacity judgments. This interpretation is belied by the plain language of the section that clearly states the provision applies to “
any
 judgment.” (Emphasis added.) 55 ILCS 5/5–1002 (West 2000). If the legislature meant for the section to apply only to individual-capacity judgments, I believe it would have done so expressly.

Instead of relying on a statutory section plainly on point, the majority concludes that a county is obligated to provide funds to a county sheriff to pay official-capacity judgments, relying primarily on two general provisions of the Code, sections 4–6003 and 5–1106 (55 ILCS 5/4–6003, 5–1106 (West 2000)). Slip op. at 14. The majority reasons that because these sections provide that the sheriff’s office is to be financed by public funds appropriated to it by a county board, a “statutory scheme” exists requiring the county to pay official-capacity judgments entered against the sheriff’s office. I disagree with the majority for three reasons.

First, the majority’s opinion runs counter to the familiar doctrine of
 ejusdem generis.
 That principle of statutory construction provides that when a statute lists several classes of persons or things but provides that the list is not exhaustive, the class of unarticulated persons or things will be interpreted as those “others such like” the named persons or things. 
City of East St. Louis v. East St. Louis Financial Advisory Authority
, 188 Ill. 2d 474, 484 (1999). Section 4–6003 is a general provision fixing the amount of compensation, together with necessary expenses, of sheriffs in counties with populations of less than 2 million. The necessary expenses are defined to include the hiring of clerks, stationery, fuel, and other expenses. Notably absent from this list is any reference to the payment of judgments. The payment of judgments is not an expense “such like” clerk personnel, stationery, or fuel. Thus, an obligation of a county to pay a judgment entered against a sheriff cannot reasonably be inferred from the language of section 4–6003.

Second, section 5–1106 requires county boards to provide, among other things, “reasonable and necessary expenses for the use of the county board, county clerk, county treasurer, recorder, sheriff, coroner, State’s attorney, superintendent of schools, judges and clerks of courts, and supervisor of assessment.” 55 ILCS 5/5–1106 (West 2000). Although this provision does not give examples of the kinds of expenses within the reasonable and necessary category, the statute is concerned generally with provisions for county office buildings and for equipment and repairs (55 ILCS 5/5–1106 (West 2000)). An obligation to pay judgments simply does not arise from the plain language of this section.

Lastly, the majority’s opinion does not recognize specific safeguards designed by the legislature to protect counties from unrestricted and unlimited liability for judgments rendered against county sheriffs. Those safeguards, found solely in section 5–1002, are: (1) a cap of $500,000 in liability for the county; (2) specific notice requirements to the county; (3) an exemption for the county if the injury was caused by the sheriff’s willful misconduct; and (4) authority for the county to intervene and to appear and defend the action (55 ILCS 5/5–1002 (West 2000)). The wisdom of the majority’s decision to sanction a sheriff’s authority to settle a lawsuit that a county is ultimately responsible for paying is questionable in the first place. Since the Code gives counties the exclusive authority to levy taxes to pay judgments (see 55 ILCS 5/1–6004 (West 2000)), it is axiomatic that the counties should have the ultimate authority to settle the underlying lawsuits.  Beyond this fundamental concern, if the comprehensive indemnity scheme set out in section 5–1002 is wholly ignored, then a county could be held responsible for satisfying a judgment in any amount by reason of a settlement it had no opportunity to approve or even review stemming from a lawsuit it had no notice of whatsoever. That concern would be completely alleviated by section 5–1002’s notice requirement and the language allowing counties to intervene and to appear and defend the action. Under the majority’s opinion, contrary to the legislature’s express language, there is no limitation on the amount of recovery, no notice requirement, and no authorization for the county to intervene.

The majority states that it expresses “no opinion with respect to the validity of a settlement agreement stemming from a lawsuit of which a county had no notice.” Slip op. at 18. I question how the majority can qualify its opinion in such a way when there is absolutely no authority, under the majority’s opinion, that requires a county sheriff or deputy to provide the county with notice of the underlying suit. Having overlooked section 5–1002’s safeguards, the majority was simply left with no other choice but to begin to graft the section 5–1002 protections onto the general statutory section.

Consider for a moment that a sheriff in a case such as the one at bar decides to settle a lawsuit for $5 million or $50 million or $5 billion. There being, under the majority’s decision, no limitation on the amount of recovery, no notice requirement, and no authorization for the county to intervene, there would be absolutely nothing a county could do to avoid being bound by such a judgment. How can this result be countenanced?

The majority attempts to reconcile its position by reasoning that, under section 5–1002, counties are not required to indemnify sheriffs for injuries resulting from “wilful misconduct.” 55 ILCS 5/5–1002 (West 2000). According to the majority, the county government could thus “insulate itself from liability” because “ ‘all violations of Title VII require discriminatory intent, a form of wilful misconduct.’ ”  Slip op. at 10, quoting 
Carver v. Sheriff of La Salle County
, 243 F.3d 379, 384 (7th Cir. 2001). I respectfully submit the majority is incorrect. First of all, the scope of the willful misconduct limitation should be defined in light of the kinds of remedies available to the victim of the misconduct. Surely, a county should not be required to indemnify a sheriff for a murder, a felony, or other egregious behavior. But, the victim of an official policy decision, resulting in discrimination or a depravation of constitutionally protected rights could recover a judgment, even if the policy were the result of a deliberate decision.  Second, if the county was complicit in the misconduct, then the plaintiff could sue the county directly.

Section 5–1002, entitled “Indemnity of sheriff or deputy,” requires a county to indemnify a sheriff for 
any
 judgment recovered against him for injuries caused while engaged in the performance of his duties. Given that this statute applies to any personal injury or property judgment, it applies to the official-capacity judgment at issue in this case. Thus, the “when” portion of the certified question should depend on a finding of at least substantial compliance with the terms of that statute. Since I cannot agree that any other basis exists requiring the county to pay a judgment entered against a sheriff in his official capacity, I respectfully dissent.

FOOTNOTES
1:     
1
Federal Rule of Civil Procedure 69(a) allows a judgment creditor to obtain discovery from “any person,” using the procedures provided by the law of the state where the district court sits. In Illinois, the governing rule is Illinois Supreme Court Rule 277(a), which authorizes a judgment creditor to commence a supplementary proceeding “with respect to a judgment which is subject to enforcement *** against the judgment debtor or any third party the judgment creditor believes has property of or is indebted to the judgment debtor.” 134 Ill. 2d R. 277(a). The citation filed by plaintiffs sought to compel La Salle County to disclose its bank accounts, any appropriations, approvals, consents and authorizations of monies to be disbursed to the sheriff’s office; documents evidencing any wages due or about to become due to the sheriff and his employees; and a list of assets owned by the La Salle County sheriff.

2:     
2
Our Rule 20 permits the United States Court of Appeals for the Seventh Circuit to certify a question of Illinois law to this court, where the question “may be determinative of the said cause, and there are no controlling precedents in the decisions of this court.” 145 Ill. 2d R. 20(a).